SEIKEL et al., Appellees,

v.

CITY OF AKRON, Appellant.

[Cite as *Seikel v. Akron*, 191 Ohio App.3d 362, 2010-Ohio-5983.]

Court of Appeals of Ohio,
Ninth District, Summit County.

No. 25000.

Decided Dec. 8, 2010.

John T. Scanlon, for appellees.

Cheri Cunningham, Akron Director of Law; Douglas G. Leak; and Elizabeth Nocera Davis, for appellant.

WHITMORE, Judge.

{¶ 1} Defendant-appellant, the city of Akron, appeals from the decision of the Summit County Court of Common Pleas denying its motion for summary judgment. This court reverses and remands the matter.

I

{¶ 2} On May 20, 2006, Shannon Seikel, the nine-year-old daughter of Thomas and Kelly Seikel (collectively, "the Seikels"), was injured when a tree fell upon the vehicle in which she was traveling while on Memorial Parkway in Akron. Shannon sustained serious and debilitating medical injuries as a result. The tree that struck the vehicle fell from a lot that is owned by Akron.

{¶ 3} On January 18, 2008, the Seikels filed a personal-injury suit against Akron, alleging that it was negligent in maintaining the trees in the lot adjacent to Memorial Parkway, which resulted in a tree falling on the vehicle in which Shannon was riding. Akron answered and, following further discovery, filed a motion for summary judgment, arguing that it was immune from liability pursuant to R.C. 2744.02(A)(1), which provides blanket immunity to political subdivisions in connection with any governmental functions they perform. The Seikels filed a brief in opposition, arguing that the maintenance of the lot and its attendant trees was a proprietary function to which immunity does not attach. The trial court denied Akron's motion for summary judgment, having concluded that the care of trees located on city-owned property is a proprietary function. Akron timely appealed and asserts one assignment of error for our review.

II

Assignment of Error

The trial court erred in denying defendant-appellant the city of Akron's motion for summary judgment on its defense of sovereign immunity.

{¶ 4} In its sole assignment of error, Akron asserts that the trial court erred by denying its motion for summary judgment because it is statutorily immune from liability for the injuries caused by the tree that fell onto Memorial Parkway, injuring Shannon. We agree.

{¶ 5} An appellate court reviews an award of summary judgment de novo. *Grafton v. Ohio Edison Co.* (1996), 77 Ohio St.3d 102, 105, 671 N.E.2d 241. It applies the same standard as the trial court, viewing the facts of the case in the light most favorable to the nonmoving party and resolving any doubt in favor of the nonmoving party. *Viock v. Stowe–Woodward Co.* (1983), 13 Ohio App.3d 7,

12, 13 OBR 8, 467 N.E.2d 1378. Summary judgment is proper under Civ.R. 56(C) if:

> (1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party.

*Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327, 4 O.O.3d 466, 364 N.E.2d 267. The party moving for summary judgment bears the initial burden of informing the trial court of the basis for the motion and pointing to parts of the record that show the absence of a genuine issue of material fact. *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 292–293, 662 N.E.2d 264. Specifically, the moving party must support its motion by pointing to some evidence in the record of the type listed in Civ.R. 56(C). Id. Once this burden is satisfied, the nonmoving party bears the burden of offering specific facts to show a genuine issue for trial. Id. at 293; Civ.R. 56(E). Suits involving the application of governmental immunity present a question of law and are properly determined by summary judgment. *Conley v. Shearer* (1992), 64 Ohio St.3d 284, 292, 595 N.E.2d 862. Furthermore, because this appeal involves an issue of governmental immunity, the denial of Akron's motion for summary judgment constitutes a final, appealable order. See R.C. 2744.02(C); *Hubbell v. Xenia*, 115 Ohio St.3d 77, 2007-Ohio-4839, 873 N.E.2d 878, syllabus.

■ {¶ 6} In its motion for summary judgment, Akron argues that it is a political subdivision and, therefore, the statutory protections established under the Political Subdivision Tort Liability Act found in R.C. 2744 et seq. bar it from any liability in this case. Specifically, Akron argues that the care and maintenance of the trees that are located on city-owned property adjacent to a roadway is a governmental function. Consequently, Akron alleges that it is absolutely immune from liability because none of the five enumerated exceptions to liability set forth in R.C. 2744.02(B) apply to this case. Akron further asserts, in the alternative, that if an exception to governmental immunity does exist, it can re-establish immunity based on the defenses available to it in R.C. 2744.03.

{¶ 7} The Supreme Court recently reiterated the three-tiered analysis that a court must undertake to determine whether a political subdivision is immune from liability under R.C. 2744 et seq. See *Lambert v. Clancy*, 125 Ohio St.3d 231, 2010-Ohio-1483, 927 N.E.2d 585, at ¶ 8.

> A general grant of immunity is provided within the first tier, which states that "a political subdivision is not liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by any act or omission of

the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function." R.C. 2744.02(A)(1).

> The second tier in the immunity analysis focuses on the five exceptions to this immunity, which are listed in R.C. 2744.02(B). *Elston* [*v. Howland Local Schools*], 113 Ohio St.3d 314, 2007-Ohio-2070, 865 N.E.2d 845, ¶ 11. If any of the exceptions to immunity are applicable, thereby exposing the political subdivision to liability, the third tier of the analysis assesses whether any of the defenses to liability contained in R.C. 2744.03 apply to reinstate immunity. Id. at ¶ 12.

Id. at ¶¶ 8–9. Neither party disputes that Akron is a political subdivision as defined by R.C. 2744.01(F). Consequently, the general grant of immunity accorded to Akron under R.C. 2744.02(A)(1) applies in the instant case and will preclude liability unless the Seikels can show that an exception under R.C. 2744.02(B) applies. It is at this juncture where the parties disagree as to whether maintaining the lot and its attendant trees constitutes a governmental or proprietary function and, therefore, what exceptions to immunity might apply.

{¶ 8} The term "governmental function" for the purposes of immunity is defined in both general and specific terms. See R.C. 2744.01(C)(1) and (2). Akron argued in its summary-judgment motion that the general definition of "governmental function" includes "[a] function that is imposed upon the state as an obligation of sovereignty and that is performed by a political subdivision voluntarily or pursuant to legislative requirement." R.C. 2744.01(C)(1)(a). To that end, Akron argues that because R.C. 723.01 imposes an obligation upon cities to "care, supervis[e], and control * * * public highways, streets, avenues, alleys, sidewalks, [and] public grounds, * * * within the municipal corporation," the care and maintenance of the trees, located on public ground and adjacent to the street, is a governmental function pursuant to R.C. 2744.01(C)(1)(a). R.C. 723.01. Additionally, Akron argues that under the more specified responsibilities of a political subdivision, the term "governmental function" includes "[t]he regulation of the use of, and the maintenance and repair of, roads, highways, streets, avenues, alleys, sidewalks, * * * and public grounds." R.C. 2744.01(C)(2)(e). Akron relies on authority from two other districts to support its claim that maintenance of trees located on public ground near a public road constitutes a governmental function for purposes of sovereign-immunity analysis. See *Featherstone v. Columbus,* 10th Dist. No. 06AP–89, 2006-Ohio-3150, 2006 WL 1704110, at ¶ 12 (concluding that "[i]t is clear from the record that when [the city of Columbus] pruned the branches of [a homeowner's] trees, it was acting in connection with a governmental function"); *Laurie v. Cleveland,* 8th Dist. No. 91665, 2009-Ohio-869, 2009 WL 483175, at ¶ 34 (concluding that "tree trimming is

a 'governmental function' under the general definition set forth in R.C. 2744.01(C)(1)").

{¶ 9} Akron further asserts that its immunity remains intact because none of the exceptions to immunity set forth in R.C. 2744.02(B) apply to the case at bar. Akron notes that the only possible exception to immunity that could apply is the provision under R.C. 2744.02(B)(3), which imposes liability upon a political subdivision for "injury, death, or loss to person or property caused by [its] negligent failure to keep public roads in repair and other negligent failure to remove obstructions from public roads." Akron argues that there is no evidence that the road was in disrepair or that, until the tree at issue had actually fallen into the road, it could be negligent in failing to remove such an obstruction. Again, Akron relies upon the Eighth District's decision in *Laurie v. Cleveland* as authority for its assertion that "a city cannot be held liable for injuries caused by a tree that is adjacent to a public road because a roadside tree is not an 'obstruction' " under the revised terms of R.C. 2744.02(B)(3).

{¶ 10} In *Laurie v. Cleveland*, 2009-Ohio-869, 2009 WL 483175, the Eighth District considered whether the city of Cleveland could assert an immunity defense in response to a claim of contributory negligence when a motorcyclist was injured after colliding with a van that was backing onto the street. There, the plaintiff claimed that the trees hanging near the street created a "visual obstruction" so that the van driver was unable to see the plaintiff approaching on her motorcycle. *Laurie* at ¶ 42–45. The *Laurie* court noted that tree trimming was not included in the express list of "governmental functions" identified in R.C. 2744.01(C)(2), but concluded that tree trimming was a governmental function under the general definition of that term as set forth in R.C. 2744.01(C)(1) "because it is an obligation imposed upon the city as a sovereign under R.C. 723.01." Id. at ¶ 34. Despite revisions over time to other portions of R.C. 723.01, the *Laurie* court concluded that the portion of the statute that imposed liability upon a political subdivision to maintain its "public highways, streets, avenues, alleys, sidewalks, [and] public grounds" had remained intact and unchanged throughout time, and had been consistently interpreted to "classify[ ] a 'tree lawn' within the ambit of a city's care under R.C. 723.01." Id. at ¶ 33. The court likewise noted that because the specific terms used to define a "governmental function" under R.C. 2744.01(C)(2)(e) so closely mimicked the language of R.C. 723.01, imposing the same obligation on a city, it was evident that tree trimming was meant to be considered a governmental function for purposes of sovereign immunity. Id. at ¶ 35 (recounting that a "governmental function" as defined by R.C. 2744.01(C)(2)(e) includes the "regulation * * * and the maintenance and repair of, roads, highways, streets, avenues, alleys, sidewalks, * * * and public grounds").

{¶ 11} The *Laurie* court further determined that based on the statutory revisions in R.C. 2744.02(B)(3), the exception to immunity that would permit a finding of liability against the city was inapplicable; therefore, the city was entitled to immunity. *Laurie* at ¶ 57–58. In reaching its conclusion, the Eighth District relied largely on the analysis undertaken by the Supreme Court in *Howard v. Miami Twp. Fire Div.*, 119 Ohio St.3d 1, 2008-Ohio-2792, 891 N.E.2d 311, as to the effect that the 2003 legislative amendments had on the provisions governing statutory immunity in R.C. 2744 et seq. We consider their analysis instructive in this case.

{¶ 12} In *Howard*, the Supreme Court specifically noted that the General Assembly had amended R.C. 2744.02(B)(3) with the intent of narrowing the exceptions to immunity for political subdivisions. Id. at ¶ 26. Under the prior version of R.C. 2744.02(B)(3), the statute provided an exception to immunity for an injury or death that was caused by a political subdivision's " 'failure to keep public roads, highways, streets, avenues, alleys, sidewalks, * * * or public grounds within the political subdivisions open, in repair, *and free from nuisance.*' " (Emphasis sic.) Id. at ¶ 24, quoting former R.C. 2774.02(B)(3). The *Howard* court noted, however, that with the enactment of S.B. 106 in April 2003, the statute was amended to impose liability only in circumstances when a political subdivision " 'fail[s] to keep public roads in repair and * * * fail[s] to remove obstructions from public roads.' " Id. at ¶ 19, quoting current R.C. 2744.02(B)(3). In considering this change to the language of the statute, the *Howard* court concluded that "the legislature's action in amending R.C. 2744.02(B)(3) was not whimsy[,] but a deliberate effort to limit political subdivisions' liability for injuries and deaths on their roadways." Id. at ¶ 26. The court acknowledged that in the past, it and other courts had "interpret[ed] the term 'nuisance' broadly to reach an array of acts or omission[s] that endanger life or health." Id. at ¶ 27. In essence, the Supreme Court acknowledged having denied immunity to political subdivisions in situations when there was merely a threat of harm to the roadway, or when safety might be in jeopardy, even though the condition did not actually "appear on the roadway itself." Id.

{¶ 13} The *Howard* court specifically noted that when it last addressed exceptions to immunity in *Harp v. Cleveland Hts.* (2000), 87 Ohio St.3d 506, 721 N.E.2d 1020, it considered a defective tree limb that threatened to fall onto the roadway as constituting a "nuisance," thereby establishing an exception to immunity under former R.C. 2744.02(B)(3). Id., 119 Ohio St.3d 1, 2008-Ohio-2792, 891 N.E.2d 311, at ¶ 28. The court concluded that under the revised terms of R.C. 2744.02(B)(3), wherein the legislature replaced the phrase "free from nuisance" with the phrase "remove obstructions," the legislature had made "a deliberate effort to impose a condition more demanding * * * in order for a

plaintiff to establish an exception to immunity" for road-related injuries like the case at bar. Id. at ¶ 29. Accordingly, the *Howard* court held that "for the purposes of R.C. 2744.02(B)(3), an 'obstruction' must be an obstacle that blocks or clogs the roadway and not merely a thing or condition that hinders or impedes the use of the roadway or that may have the potential to do so." Id. at ¶ 30. Based on this analysis, the Eighth District followed suit in *Laurie*, 2009-Ohio-869, 2009 WL 483175, noting that the tree branches at issue in that case could have constituted a "nuisance" under former R.C. 2744.02(B)(3), but recognizing that under the current version of the statute, as interpreted by the Supreme Court in *Howard*, the overhanging trees were not an "obstruction." *Laurie* at ¶ 57. Thus, the *Laurie* court concluded that the plaintiff could not establish an exception to immunity and the city of Cleveland was entitled to immunity as a matter of law.

{¶ 14} In response to Akron's assertion that maintaining the trees in an area adjacent to a public road is a governmental function to which none of the exceptions to immunity apply, the Seikels argue that the location of this incident does not support such a conclusion. Specifically, they argue that the land where the tree fell does not meet any of the specific definitions of public highways, streets, avenues, alleys, sidewalks, public grounds, or bridges as set forth in R.C. 723.01, and therefore, does not qualify as an obligation imposed by statute pursuant to the general definition of a "governmental function." See R.C. 2744.01(C)(1). They further argue that maintenance of the tree at issue would not fall under the specific definition of "governmental function" found in R.C. 2744.01(C)(2)(e) either. The Seikels assert that the foregoing statutes should be strictly construed, and because there is no sidewalk or tree lawn near where the tree fell, maintenance of the trees cannot be considered a governmental function under either provision. The Seikels assert that the area is surrounded by privately owned lots, so that it is difficult to tell where Akron's property actually begins or ends. They also argue that the catchall term "public grounds" as used in those statutes was meant to apply only to areas that are used by the public for travel or invited for use by the public, citing *Std. Fire Ins. Co. v. Fremont* (1955), 164 Ohio St. 344, 58 O.O. 130, 131 N.E.2d 221. Consequently, they argue that there is nothing "public" about the land itself and there is no reason for people to travel on the property where the tree was located. The Seikels distinguished *Laurie* from this case by arguing that the tree trimming that occurred in *Laurie* was done in an area that contained a sidewalk and tree lawn, not a vacant lot, and that the tree maintenance was required to remove a view-obstruction for cars pulling out onto the road.

{¶ 15} Instead, the Seikels assert that the tree maintenance at issue in this case satisfies the statutory definition of a proprietary function because it (1) is not

a governmental function, and (2) is a function that "promotes or preserves the public peace, health, safety, or welfare [of the public] and that involves activities that are customarily engaged in by nongovernmental persons." R.C. 2744.01(G)(1)(b). In doing so, they rely on the deposition testimony of an employee from the Akron Parks Maintenance Division, Bob Reed, who agreed that the area in which the tree fell was inspected to determine whether tree removal was warranted based on the safety of those traveling the nearby street, not on the aesthetics of the wooded lot. Additionally, they point to the deposition testimony of a retired Akron Parks Department specialist who stated that one of his responsibilities was to monitor contractors that Akron employed to trim and remove trees throughout the city. Based on the foregoing testimony, the Seikels conclude that maintenance for the tree at issue was a proprietary function because there is evidence that the maintenance was performed by "nongovernmental persons" in an effort to preserve the safety and welfare of the area. See R.C. 2744.01(G)(1)(b).

{¶ 16} The Seikels, however, do not direct this court to, nor is this court able to find, any authority to support the Seikels' claim that even if the foregoing facts are true, they support a finding under the relevant law that the care and maintenance of the tree at issue constitutes a proprietary function. Though they attempt to factually distinguish the *Laurie* decision, the body of law supports the conclusion that a political subdivision's responsibility for maintaining trees adjacent to public roads is a governmental function. *Laurie,* 2009-Ohio-869, 2009 WL 483175, at ¶ 35; *Featherstone,* 2006-Ohio-3150, 2006 WL 1704110, at ¶ 12. See also *Harp,* 87 Ohio St.3d at 509, 721 N.E.2d 1020 (analyzing any potential for an exception to immunity under R.C. 2744.02(B)(3) as a governmental function, not under R.C. 2744.02(B)(2) as a proprietary function); *Estate of Finley v. Cleveland Metroparks,* 189 Ohio App.3d 139, 2010-Ohio-4013, 937 N.E.2d 645 at ¶ 41, fn. 4 (analyzing the exception to immunity under R.C. 2744.02(B)(3) and acknowledging that "amend[ing that provision to change] 'nuisance' to 'obstruction' means that a political subdivision will probably never be found to be on notice of an obstruction that occurs simultaneously with an accident, thereby making it impossible for a plaintiff to recover in these types of situations [when a tree falls onto the roadway from an adjacent lot, causing injuries and a death]").

{¶ 17} In particular, we note that when the Supreme Court in *Harp* looked at the issue of sovereign immunity, it did so under facts nearly identical to those in the case at bar. In *Harp,* the tree that fell was located approximately 16–30 feet from the curb in a "wooded area" adjacent to a public road, with no mention of a sidewalk. *Harp* at 507. Similar to this case, there were no assertions in *Harp* that the tree that gave way and fell onto the motorist had caused a visual obstruction or was hanging low enough to obstruct traffic on the road. Id. The Supreme Court, however, implicitly considered the issue of tree maintenance in

such circumstances to be a governmental function, as it addressed only the application of R.C. 2744.02(B)(3), not 2744.02(B)(2). Though the *Harp* court held that a political subdivision could be held liable in that case under the terms of former R.C. 2744.02(B)(3), the high court has since recognized that changes made to the immunity statute would no longer permit such a conclusion on the facts of that case. *Howard,* 119 Ohio St.3d 1, 2008-Ohio-2792, 891 N.E.2d 311, at ¶ 26–30. Even if we were to disregard the revised language in the statute, the *Harp* court was operating under facts nearly identical to those in the case at bar and did not consider the issue of tree maintenance as constituting a proprietary function. *Harp,* 87 Ohio St.3d at 507–509, 721 N.E.2d 1020.

{¶ 18} Furthermore, the Seikels did not assert at any point in their opposition brief what exception to immunity is applicable to their suit under R.C. 2744.02. While they argue that the exceptions to immunity should be narrowly defined, and presumably seek to apply R.C. 2744.02(B)(2) as the exception to immunity, they have failed to offer any argument or proper Civ.R. 56(C) evidence in support of the same. See Civ.R. 56(C) (providing as an exclusive list of evidentiary materials for consideration on summary judgment "the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact"). See also *Wolford v. Sanchez,* 9th Dist. No. 05CA008674, 2005-Ohio-6992, 2005 WL 3556681, at ¶ 20 (noting that "[t]he proper procedure for introducing evidentiary matter not specifically authorized by Civ.R. 56(C) is to incorporate it by reference in a properly framed affidavit pursuant to Civ.R. 56(E)").

{¶ 19} Based on the foregoing authority and analysis, we conclude that Akron satisfied its burden of establishing that maintenance of the tree at issue was a governmental function. The Seikels, however, have failed to sustain their reciprocal burden of establishing that an exception to immunity under R.C. 2744.02 applies. Because none of the exceptions to immunity are applicable, this court need not engage in the third tier of the immunity analysis. See *S.H.A.R.K. v. Metro Parks Serving Summit Cty.,* 9th Dist. No. 24443, 2009-Ohio-3004, 2009 WL 1800142, at ¶ 21.

{¶ 20} The trial court erred in denying Akron's motion for summary judgment because Akron is entitled to immunity as a matter of law. Accordingly, Akron's assignment of error is sustained.

### III

{¶ 21} Akron's sole assignment of error is sustained. The judgment of the Summit County Court of Common Pleas is reversed, and the cause is remanded for entry of judgment in favor of Akron.

Judgment reversed
and cause remanded.

CARR, J., concurs.

BELFANCE, P.J., dissents.

BELFANCE, Presiding Judge, dissenting.

{¶ 22} I respectfully dissent. Based upon the particular facts of this case, I would conclude that Akron is not entitled to the benefit of immunity at this point in the proceedings. Thus, I would affirm the judgment of the trial court.

{¶ 23} As noted by the majority, a three-tiered analysis applies in determining whether a political subdivision is entitled to the benefit of immunity. See *Cater v. Cleveland* (1998), 83 Ohio St.3d 24, 28, 697 N.E.2d 610. R.C. 2744.02(A)(1) provides a general grant of immunity to a political subdivision, which is only revoked if an exception listed in R.C. 2744.02(B) is applicable. Id. If an exception applies, the political subdivision can regain immunity if a defense enumerated in R.C. 2744.03(A) applies. Id.

{¶ 24} In the instant matter, the Seikels contended in their brief in opposition to Akron's motion for summary judgment that the exception stated in R.C. 2744.02(B)(2) applies, rendering Akron liable. R.C. 2744.02(B)(2) provides that "[e]xcept as otherwise provided in sections 3314.07 and 3746.24 of the Revised Code, political subdivisions are liable for injury, death, or loss to person or property caused by the negligent performance of acts by their employees with respect to proprietary functions of the political subdivisions." The Supreme Court of Ohio has interpreted the statutory language to allow liability "for injury, death, or loss to persons or property caused by an act or omission of the political subdivision or any of its employees in connection with the performance of a proprietary function." *Hill v. Urbana* (1997), 79 Ohio St.3d 130, 679 N.E.2d 1109, paragraph one of the syllabus.

{¶ 25} The dispute centers on whether maintaining the trees at issue constitutes a proprietary or governmental function. Clearly, if it is a governmental function, by its very terms, R.C. 2744.02(B)(2) would not apply. The Seikels assert that it is a proprietary function, while Akron maintains that it is a governmental function.

{¶ 26} The definition of the term "governmental function" that Akron believes is applicable requires it to establish that the area where the trees were located constituted a "public ground." However, there is no evidence in the record that establishes that the trees were located on a public ground. The Supreme Court of Ohio has stated:

> The subject matter of the statute—"public highways, streets, avenues, alleys, sidewalks, public grounds, bridges, aqueducts, and viaducts"—relates specifically to traditional areas used only for the purpose and means of travel. The

term, "public grounds," contemplates areas to which the public may resort and within which it may walk, drive or ride, etc.

*Std. Fire Ins. Co. v. Fremont* (1955), 164 Ohio St. 344, 347, 58 O.O. 130, 131 N.E.2d 221, quoting R.C. 723.01. The trial court in its judgment entry noted that "[t]here is no sidewalk or tree lawn along the road at the location where the accident occurred. [In addition,] [t]he land on which the tree was located was not park land or generally open to the public."

{¶ 27} The majority maintains that "the body of law supports the conclusion that a political subdivision's responsibility for maintaining trees adjacent to public roads is a governmental function." (Majority opinion at ¶ 16.) However, the case law relied on by the majority to reach this conclusion is clearly distinguishable. Each case relied on by the majority that concluded that tree-trimming was a governmental function involved an area that could be classified as a public ground. *Laurie v. Cleveland,* 8th Dist. No. 91665, 2009-Ohio-869, 2009 WL 483175, involved the tree-lawn area. Id. at ¶ 32–33. *Featherstone v. Columbus,* 10th Dist. No. 06AP–89, 2006-Ohio-3150, 2006 WL 1704110, at ¶ 10, involved tree limbs encroaching on a public sidewalk. *Harp v. Cleveland Hts.,* 87 Ohio St.3d 506, 507, 721 N.E.2d 1020, involved a public park. *Estate of Finley v. Cleveland Metroparks,* 189 Ohio App.3d 139, 2010-Ohio-4013, 937 N.E.2d 645, at ¶ 33, involved a tree located either in a public park or within the city's right of way. In addition, neither the *Harp* court nor the *Estate of Finley* court was confronted with analyzing whether R.C. 2744.02(B)(2) applied to the situation.

{¶ 28} Thus, Akron cannot fit the instant situation, maintenance of trees not located in the tree lawn, near a sidewalk, or in a public park, within the definition of governmental function that it believes applies. Moreover, the factual situation at issue fits squarely within the general definition of proprietary function: (1) it does not fit within the governmental-function definitions and (2) it "promotes or preserves the public peace, health, safety, or welfare and that involves activities that are customarily engaged in by nongovernmental persons." R.C. 2744.01(G)(1). Therefore, I would conclude that the exception contained within R.C. 2744.02(B)(2) is available to the Seikels should they demonstrate that Akron or its employees were negligent. Further, in viewing the facts in a light most favorable to the Seikels, genuine issues of material fact exist with respect to whether Akron was negligent in maintaining the trees. Moreover, I cannot conclude that Akron met its summary-judgment burden with respect to the defenses contained in R.C. 2744.03(A), because it did not submit sufficient evidence to establish the absence of a genuine dispute of material fact on this point. Thus, because I agree with the trial court's finding that Akron was not entitled to summary judgment, I would affirm its judgment.