[Cite as *Shope v. Portsmouth*, 2012-Ohio-1605.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
SCIOTO COUNTY

BRENDA SHOPE, ADMINISTRATOR OF : 
THE ESTATE OF ERIC JAMES SHOPE, :
DECEASED, :     Case No: 11CA3459
  :
     Plaintiff-Appellee. :
  :
     v. :
  :     <u>DECISION AND</u>
CITY OF PORTSMOUTH, OHIO, et al., :    <u>JUDGMENT ENTRY</u>
  :
     Defendants-Appellants. :     Filed:  April 4, 2012

---

<u>APPEARANCES:</u>

Lawrence E. Barbiere, Scott A. Sollmann and John W. Hust, Schroeder, Maundrell, Barbiere & Powers, Mason, Ohio, for City of Portsmouth, Ohio, Appellant.

Rick L. Faulkner and Kenneth W. Porter, The Faulkner Law Office, Wheelersburg, Ohio, for Appellee.

---

Kline, J.:

{¶1}   The City of Portsmouth, Ohio, (hereinafter "Portsmouth") appeals the judgment of the Scioto County Court of Common pleas.  Brenda Shope (hereinafter "Brenda"), administrator of the estate of Eric James Shope (hereinafter "Eric"), sued Portsmouth after Eric died in an ATV accident.  Portsmouth filed a motion for summary judgment on the issue of sovereign immunity, but the trial court denied Portsmouth's motion based on the exception to immunity found in R.C. 2744.02(B)(3).  On appeal, Portsmouth claims that R.C. 2744.02(B)(3) does not apply and, as a result, that the trial court should have granted summary judgment in favor of Portsmouth.  We agree.  After

construing the record and all inferences therefrom in Brenda's favor, we find, as a matter of law, that R.C. 2744.02(B)(3) does not apply to the present case. In other words, Portsmouth could not have (1) negligently failed to keep a public road in repair or (2) negligently failed to remove an obstruction from a public road. Accordingly, we reverse the judgment of the trial court.

I.

{¶2}   On the evening of October 18, 2008, Eric was driving an ATV in Portsmouth, Ohio. Eric turned off Valley Street and headed west on Munn Street. At this point, the westbound pavement on Munn Street runs for approximately 150 feet before ending at an alleyway. From that point, an unpaved, grassy area runs in the continued westerly direction of Munn Street for approximately 37 feet before stopping at a ravine and Munn's Run creek. Eric drove his ATV through the alleyway and onto the grassy area. A large parking curb was situated in the grassy area just before the ravine. Eric drove through the grassy area, towards the ravine, and hit the parking curb. This caused Eric and his ATV to go airborne. Eric landed on the other side of Munn's Run creek and died upon impact.

{¶3}   On November 17, 2009, Brenda filed suit against Portsmouth and various unnamed defendants. Brenda alleged that Portsmouth "owed a duty to decedent and others to place and maintain traffic control devices in accordance with the department of transportation manual and specifications for a uniform system of traffic control devices which are necessary to regulate, warn, or guide traffic[.]" Complaint at 2. Brenda further alleged that Portsmouth "failed to place and/or maintain traffic control devices in accordance with their duties on or around or at the end of Munn St[reet]." *Id.* In its

answer, Portsmouth claimed "that it is immune from the claims set forth in [Brenda's] complaint." Answer at 4.

### A. Munn Street

{¶4} In the proceedings below, the parties disagreed as to whether Munn Street continues onto the unpaved, grassy area. Brenda claimed that Munn Street does continue past the alleyway, and, to support her claim, she produced a plat map from 1925. This plat documents the De Ray Addition to Portsmouth, which the Portsmouth City Council approved on July 15, 1925. The De Ray Addition plat shows Munn Street going west from Valley Street, extending through the ravine and Munn's Run creek, and continuing on to Harrisonville Avenue. And based on the layout of Munn Street in the 1925 plat, Brenda argued that the accident occurred on Munn Street itself. Portsmouth, however, produced "the most recent Plat Map for the North Moreland Second Allot. It details that The North Moreland Second Allot was last revised in January of 1984 and shows that the portion of Munn Street connected to Valley Street runs approximately 150 feet until it ends." Affidavit of Larry Justice at 1. The unpaved, grassy area west of Munn Street is labeled a "proposed extension of Munn Street" on the 1984 plat. Larry Justice works in the Portsmouth Engineering Department, and he concluded "that the parking curb which Eric Shope made contact with prior to the accident was located within the unpaved/grassy area delineated as a 'proposed extension of Munn Street.'" Affidavit of Larry Justice at 2.

### B. Traffic Control Devices

{¶5} On the date of Eric's crash, "the crash location had no documented traffic control devices in the form of warning signs, pavement markings, standard barricades

with retro-reflective tape, guardrails etc." Preliminary Report of Kenneth W. Porter at 1. In an interrogatory, Brenda asked whether "the use of signage or lack thereof in the vicinity of the Incident * * * [was] based on an 'engineering study' or on 'engineering judgment[.']" Portsmouth objected, however, "to the implication that a lack of signage must be based upon either an 'engineering study' or on 'engineering judgment.'" Despite the lack of signage, "at the end of the grassy area immediately prior to reaching the ravine/culvert there was a '*parking block*[.]'" (Emphasis sic.) Preliminary Report of Kenneth W. Porter at 1. Portsmouth claimed that it did not know who placed the parking curb just before the ravine, but a resident of Munn Street claimed that a Portsmouth work crew placed it there in late 2007.

### C. Portsmouth's Motion for Summary Judgment

**{¶6}** In its motion for summary judgment, Portsmouth claimed that it was "entitled to immunity and summary judgment as a matter of law." Defendant, City of Portsmouth, Ohio's, Motion for Summary Judgment at 1. The trial court, however, ruled against Portsmouth based on the exception to immunity found in R.C. 2744.02(B)(3).

**{¶7}** Portsmouth appeals and asserts the following assignment of error: I. "THE TRIAL COURT ERRED IN DENYING SUMMARY JUDGMENT TO DEFENDANT-APPELLANT CITY OF PORTSMOUTH, OHIO[,] ON THE ISSUE OF STATUTORY IMMUNITY PURSUANT TO OHIO REVISED CODE [SECTION] 2744.01 *ET SEQ*."

### II.

**{¶8}** In its sole assignment of error, Portsmouth contends (1) that it is entitled to R.C. 2744.02(A)(1)'s general grant of immunity and (2) that R.C. 2744.02(B)(3) does not

apply to the present case.  As a result, Portsmouth argues that the trial court erred in denying the motion for summary judgment.

A. Summary Judgment Standard

**{¶9}**    "Because this case was decided upon summary judgment, we review this matter de novo, governed by the standard set forth in Civ.R. 56." *Comer v. Risko*, 106 Ohio St.3d 185, 2005-Ohio-4559, 833 N.E.2d 712, ¶ 8.  Summary judgment is appropriate only when the following have been established: (1) that there is no genuine issue as to any material fact; (2) that the moving party is entitled to judgment as a matter of law; and (3) that reasonable minds can come to only one conclusion, and that conclusion is adverse to the nonmoving party.  Civ.R. 56(C).  *Accord Bostic v. Connor*, 37 Ohio St.3d 144, 146, 524 N.E.2d 881 (1988); *Grimes v. Grimes*, 4th Dist. No. 08CA35, 2009-Ohio-3126, ¶ 14.  In ruling on a motion for summary judgment, the court must construe the record and all inferences therefrom in the opposing party's favor. *Doe v. First United Methodist Church*, 68 Ohio St.3d 531, 535, 629 N.E.2d 402 (1994).

**{¶10}**  The burden of showing that no genuine issue of material fact exists falls upon the party who moves for summary judgment.  *Dresher v. Burt*, 75 Ohio St.3d 280, 294, 662 N.E.2d 264 (1996).  However, once the movant supports his or her motion with appropriate evidentiary materials, the nonmoving party "may not rest upon the mere allegations or denials of the party's pleadings, but the party's response, by affidavit or as otherwise provided in [Civ.R. 56], must set forth specific facts showing that there is a genuine issue for trial."  Civ.R. 56(E).  *Accord Grimes* at ¶ 15.

**{¶11}**  "In reviewing whether an entry of summary judgment is appropriate, an appellate court must independently review the record and the inferences that can be

drawn from it to determine if the opposing party can possibly prevail." *Grimes* at ¶ 16. "Accordingly, we afford no deference to the trial court's decision in answering that legal question." *Morehead v. Conley*, 75 Ohio App.3d 409, 412, 599 N.E.2d 786 (4th Dist.1991). *Accord Grimes* at ¶ 16.

## B. Sovereign Immunity

{¶12} "The Political Subdivision Tort Liability Act, as codified in R.C. Chapter 2744, sets forth a three-tiered analysis for determining whether a political subdivision is immune from liability." *Cater v. Cleveland*, 83 Ohio St.3d 24, 28, 697 N.E.2d 610 (1998). *Accord Elston v. Howland Local Schools*, 113 Ohio St.3d 314, 2007-Ohio-2070, 865 N.E.2d 845, ¶ 10. The first tier involves determining whether the political subdivision is generally immune from liability under R.C. 2744.02(A)(1). *Id.* at ¶ 10; *see also Hortman v. Miamisburg*, 110 Ohio St.3d 194, 2006-Ohio-4251, 852 N.E.2d 716, ¶ 12.

{¶13} Once immunity is generally established, "the second tier of analysis is whether any of the five exceptions to immunity in subsection (B) apply." *Id.* at ¶ 12. "Only when one of the exceptions listed in R.C. 2744.02(B) applies do courts move to the third tier." *Dolan v. Glouster*, 173 Ohio App.3d 617, 2007-Ohio-6275, 879 N.E.2d 838, ¶ 17 (4th Dist.), citing *Terry v. Ottawa Cty. Bd. of Mental Retardation & Dev. Disabilities*, 151 Ohio App.3d 234, 2002-Ohio-7299, 783 N.E.2d 959, ¶ 13 (6th Dist.). If an exception to the general immunity provision does apply, "under the third tier of analysis, immunity can be reinstated if the political subdivision can successfully argue that any of the defenses contained in R.C. 2744.03 applies." *Hortman* at ¶ 12.

{¶14} Here, Portsmouth qualifies as a political subdivision. *See* R.C. 2744.01(F). Therefore, because of R.C. 2744.02(A)(1), Portsmouth is generally immune from liability.

{¶15} Next, we must determine whether any of the exceptions to immunity apply. Brenda contends that R.C. 2744.02(B)(3) applies to the present case. In relevant part, R.C. 2744.02(B)(3) provides that "political subdivisions are liable for injury, death, or loss to person or property caused by their negligent failure to keep public roads in repair and other negligent failure to remove obstructions from public roads[.]" Furthermore, "'[p]ublic roads' means public roads, highways, streets, avenues, alleys, and bridges within a political subdivision. 'Public roads' does not include berms, shoulders, rights-of-way, or traffic control devices unless the traffic control devices are mandated by the Ohio manual of uniform traffic control devices." R.C. 2744.01(H).

## C. Munn Street

{¶16} Brenda and Portsmouth disagree as to whether the accident occurred on a public road. According to Portsmouth, Munn Street ends at the point where the pavement stops and the grassy area begins -- a point approximately 37 feet before the ravine. As a result, Portsmouth contends that the accident did not occur on a public road. But Brenda argues that Munn Street continues from Valley Street, past the paved area, through the ravine and Munn's Run creek, and on to Harrisonville Avenue. Accordingly, Brenda contends that the accident occurred on Munn Street itself. In our view, however, whether the accident occurred on Munn Street is a distinction without a difference. Either way, R.C. 2744.02(B)(3) cannot apply to the spot where the accident occurred.

**{¶17}** Even if we were to assume that the accident occurred on Munn Street -- and, therefore, on a public road -- the evidence shows that the accident occurred on an area that was not improved and made passable for vehicular use. The spot of the accident is grassy and unpaved, and there is no bridge connecting Munn Street over Munn's Run creek. Under Ohio law, "the traveling public has no right to drive upon that portion of a public [road] which is not dedicated, improved and made passable for vehicular use." *Turner v. Ohio Bell Tel. Co.*, 118 Ohio St.3d 215, 2008-Ohio-2010, 887 N.E.2d 115, ¶ 12, quoting *Ohio Postal Tel.-Cable Co. v. Yant*, 64 Ohio App. 189, 193, 28 N.E.2d 646 (5th Dist.1940). Therefore, the traveling public has no right to drive upon the area where Eric's accident occurred. And in our view, R.C. 2744.02(B)(3) cannot apply to an area that the traveling public has no right to drive upon. In other words, a political subdivision cannot negligently fail to keep a road in repair that has not *already been made passable for vehicular use*. Furthermore, an obstruction is defined as "something that obstructs or impedes[.]" *Webster's Third New International Dictionary, Unabridged* (2002). And a political subdivision cannot negligently fail to remove something that obstructs or impedes the progress of a driver who has no right to be traveling on a particular road.

**{¶18}** In terms of negligence, driving on a road that has not been improved and made passable for vehicular use is analogous to trespassing. "The elements of negligence are a duty, a breach of that duty, and injury resulting proximately therefrom." *Lucero v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. No. 11AP-288, 2011-Ohio-6388, ¶ 17, citing *Strother v. Hutchinson*, 67 Ohio St.2d 282, 285, 423 N.E.2d 467 (1981). And significantly, "a landowner owes no duty to a trespasser other than to refrain from willful,

wanton or reckless conduct which is likely to injure [that trespasser]." *Diesz v. AMPCO Sys. Parking*, 9th Dist. No. 23235, 2007-Ohio-621, ¶ 12, citing *Gladon v. Greater Cleveland Regional Transit Auth.*, 75 Ohio St.3d 312, 317, 662 N.E.2d 287 (1996). We believe that a similar rule should apply to public roads that have not been improved and made passable for vehicular use. The traveling public has no right to drive upon these types of roads. Therefore, when it comes to roads that have not been improved and made passable for vehicular use, a political subdivision owes no duty to drivers except that the political subdivision's employees must not engage in willful, wanton, or reckless conduct. *See* R.C. 2744.03(A)(6)(b).

**{¶19}** Accordingly, even if the accident did occur on Munn Street, Portsmouth could have neither (1) negligently failed to keep that part of the road in repair nor (2) negligently failed to remove an obstruction from that part of the road. Therefore, we need not decide whether the grassy, unpaved area is a public road because, either way, R.C. 2744.02(B)(3) cannot apply to the spot where the accident occurred.

D. Traffic Control Devices

**{¶20}** Next, we must determine whether R.C. 2744.02(B)(3) applies to Portsmouth's use (or nonuse) of traffic control devices. To make this determination, we must interpret and apply the following statutory language: "'Public roads' does not include * * * traffic control devices unless the traffic control devices are mandated by the Ohio manual of uniform traffic control devices." R.C. 2744.01(H). Because the accident took place on October 18, 2008, the 2005 edition of the Ohio manual of uniform traffic control devices (hereinafter the "Traffic Manual") applies.

**{¶21}** "When interpreting statutes and their application, an appellate court conducts a *de novo* review, without deference to the trial court's determination." *State v. Sufronko*, 105 Ohio App.3d 504, 506, 664 N.E.2d 596 (4th Dist.1995). "[O]ur primary goal is to apply the legislative intent manifested in the words of the statute. Statutes that are plain and unambiguous must be applied as written without further interpretation. In construing the terms of a particular statute, words must be given their usual, normal, and/or customary meanings." (Citations omitted.) *Proctor v. Kardassilaris*, 115 Ohio St.3d 71, 2007-Ohio-4838, 873 N.E.2d 872, ¶ 12.

### i. Warning Signs

**{¶22}** Brenda argues that Portsmouth should have used various warning signs to alert drivers about the conditions on Munn Street. Essentially, Brenda contends that the nonuse of these warning signs implicates public roads as defined by R.C. 2744.01(H). Portsmouth, however contends the following: "The language utilized in the [Traffic Manual] concerning the placement of Dead End, No Outlet, and Pavement Ends signs along with End-of-Road markers is devoid of any mandatory 'shall' language. Therefore, since none of the aforementioned traffic control devices are mandatory pursuant to the [Traffic Manual], none of them fall within the scope of a 'public road' as defined by R.C. § 2744.01(H)[.]" Brief of Defendant-Appellant at 14.

**{¶23}** We have previously explained that

> [t]he [Traffic Manual] contains mandatory, advisory, and
> permissive conditions, differentiated by the use of the terms
> "shall," "should," and "may." Standards using the word
> "shall" are considered mandatory. Standards using the word

"should" are considered to be advising, but not mandating,

the particular signage or other device.  Standards using the

word "may" carry no requirement or recommendation.  *Webb*

*v. Edwards*, 165 Ohio App.3d 158, 2005-Ohio-6379, 845

N.E.2d 530, ¶ 23 (4th Dist.).

With this in mind, we agree with Portsmouth that the nonuse of these particular warning

signs does not implicate "public roads" as defined by R.C. 2744.01(H).

{¶24}  In the present case, the Traffic Manual does not mandate the use of Dead

End, No Outlet, or Pavement Ends signs.  For example, the Traffic Manual states that

"[t]he DEAD END * * * sign * * * *may* be used at the entrance of a single road or street

that terminates in a dead end or cul-de-sac.  The NO OUTLET * * * sign *may* be used at

the entrance to a road or road network from which there is no other exit."  (Emphasis

added.)  2005 Traffic Manual at 2C-13.  Furthermore, "[t]he DEAD END * * * or NO

OUTLET * * * signs * * * may be used in combination with the Street Name * * * signs * *

* to warn turning traffic that the cross street ends in the direction indicated by the arrow."

*Id.*  And similarly, "[a] PAVEMENT ENDS * * * word message sign * * * should be used

where a paved surface changes to either a gravel treated surface or an earth road

surface."  *Id.* at 2C-14.  Therefore, because the Traffic Manual does not mandate these

particular warning signs, they are not public roads as contemplated by R.C. 2744.01(H).

{¶25}  We also find that the Traffic Manual does not mandate the use of end-of-

roadway markers.  Here, the Traffic Manual states that "[t]he end-of-roadway marker

*may* be used in instances where there are no alternate vehicular paths."  (Emphasis

added.)  2005 Traffic Manual at 3C-2.  Therefore, there is no requirement or

recommendation about the use of end-of-roadway markers. Brenda, however, bases her public-road argument on the following language: "The end-of-roadway marker * * * shall be one of the following: a marker consisting of nine red retroreflectors, each with a minimum diameter of 75 mm (3 in), mounted symmetrically on a red * * * or black * * * diamond panel 450 mm (18 in) or more on a side; or a retroreflective red diamond panel * * * 450 mm (18 in) or more on a side." *Id.* But this language does not require the use of end-of-roadway markers. Rather, this language states that, if end-of-roadway markers are used, they must conform to certain specifications. There is *no* language in the Traffic Manual that requires the use of end-of-roadway markers at any time. Therefore, end-of-roadway markers are not public roads as contemplated by R.C. 2744.01(H).

{¶26} Finally, based on the plain language of R.C. 2744.01(H), we reject Brenda's argument that Portsmouth is not immune because it "breached the [Traffic Manual's] mandate to use engineering studies or judgments in deciding whether to install warning signs[.]" Brief of Plaintiff-Appellee at 9. Essentially, Brenda equates the Traffic Manual's mandate for engineering studies or judgment with the Traffic Manual's mandate for certain traffic control devices. But engineering studies or judgments and traffic control devices are not one and the same. Furthermore, R.C. 2744.02(B)(3) is clear: "political subdivisions are liable for injury, death, or loss to person or property caused by their negligent failure to keep *public roads* in repair[.]" (Emphasis added.) And R.C. 2744.01(H) clearly states that traffic control devices are not public roads unless those traffic control devices are mandated by the Traffic Manual. Therefore, regardless of whether a political subdivision uses engineering studies or judgments,

R.C. 2744.02(B)(3) cannot apply to the failure to maintain discretionary warning signs. R.C. 2744.02(B)(3) applies *only* to mandatory traffic control devices, which makes sense considering the "discretion" defenses available under the third tier of political-subdivision immunity. *See* R.C. 2744.03(B)(3) and 2744.03(B)(5). Simply put, when it comes to discretionary traffic control devices, failing to use engineering studies or judgments does not fit within the narrow exception of R.C. 2744.02(B)(3). *See generally Seikel v. Akron*, 191 Ohio App.3d 362, 2010-Ohio-5983, 946 N.E.2d 250, ¶ 12 (9th Dist.) (stating that "the General Assembly had amended R.C. 2744.02(B)(3) with the intent of narrowing the exceptions to immunity for political subdivisions").

### ii. Obstruction-Related Traffic Control Devices

**{¶27}** Additionally, we find that Portsmouth cannot be negligent for its failure to use obstruction-related traffic control devices. In relevant part, the Traffic Manual states the following: "Obstructions within the roadway shall be marked with a Type 1 or Type 3 object marker. In addition to markers on the face of the obstruction, warning of approach to the obstruction shall be given by appropriate pavement markings[.]" 2005 Traffic Manual at 3C-1. Here, Brenda argues that the ravine and Munn's Run creek are an obstruction in Munn Street and, as a result, that traffic control devices are required to warn drivers about the obstruction. We disagree. As we stated above, the spot of the accident has not been improved and made passable for vehicular use. Therefore, the traveling public has no right to drive upon that area, and Portsmouth has no duty to warn of an obstruction in an area where drivers have no right to be. In other words, regardless of whether obstruction-related traffic control devices qualify as public roads,

Portsmouth cannot be negligent for its failure to use them in relation to the alleged obstruction at the ravine and Munn's Run creek.

### iii. Barricades

**{¶28}** Brenda contends that the large parking curb placed in front of the ravine does not conform with the Traffic Manual's specifications for a barricade. Here, Brenda concedes that "[t]he language in Section 3F.01 [of the Traffic Manual] does not create a 'mandatory' duty to use a 'barricade' to warn and alert road users of the terminis of a roadway." Brief of Plaintiff-Appellee at 14. Nevertheless, Brenda argues that "once a decision to install is made, [the barricade] must conform to the specifications contained in the [Traffic Manual]. Otherwise, there is no immunity from liability." *Id.* We disagree.

**{¶29}** To support her barricade-related argument, Brenda relies on *Franks v. Lopez*, 69 Ohio St.3d 345, 632 N.E.2d 502 (1994). In *Franks*, the Supreme Court of Ohio held that a "township's alleged failure to maintain * * * signage already in place may constitute an actionable nuisance claim." *Id.* at 348. We find, however, that *Franks* has no application to the present case. The Supreme Court of Ohio decided *Franks* under the old Political Subdivision Tort Liability Act, which provided that political subdivisions were "liable for injury caused 'by their failure to keep public roads, highways, [and] streets * * * within the political subdivisions open, in repair, and free from nuisance * * *.'" (Alteration and omissions sic.) *Id.* at 347, quoting the former R.C. 2744.02(B)(3). But the current version of the Act provides that "political subdivisions are liable for injury, death, or loss to person or property caused by their negligent failure to keep public roads in repair and other negligent failure to remove obstructions from public roads[.]" R.C. 2744.02(B)(3). The General Assembly completely eliminated the

nuisance language in an attempt to narrow the exceptions to immunity for political subdivisions. *See Seikel*, 191 Ohio App.3d 362, 2010-Ohio-5983, 946 N.E.2d 250, at ¶ 12. Therefore, the holding in *Franks* is irrelevant to the current R.C. 2744.02(B)(3).

**{¶30}** Instead, as we already discussed, the current R.C. 2744.02(B)(3) applies *only* to mandatory traffic control devices. Barricades are not mandatory. Therefore, failing to adhere to the Traffic Manual's specifications for barricades does not fit within the narrow exception to immunity found in R.C. 2744.02(B)(3). Furthermore, the parking curb was situated just before the ravine, in an area that the traveling public has no right to drive upon. Thus, as we noted above, Portsmouth owes no duty to drivers in that area except that Portsmouth's employees must not engage in willful, wanton, or reckless conduct.

## E. Conclusion

**{¶31}** In conclusion, we find that the trial court erred in denying Portsmouth's motion for summary judgment. First, regardless of where Munn Street ends, the accident occurred on an area that has not been improved and made passable for vehicular use. Therefore, the traveling public has no right to drive upon that spot, and Portsmouth cannot be negligent for (1) failing to keep that area in repair or (2) failing to remove obstructions from that area. Furthermore, there are no exceptions to immunity for either (1) Portsmouth's alleged failure to use engineering studies or judgment in deciding whether to install discretionary warning signs or (2) Portsmouth's use (or nonuse) of various traffic control devices. Therefore, because R.C. 2744.02(B)(3) does not apply, Portsmouth is entitled to the general grant of immunity and judgment as a matter of law.

{¶32} Accordingly, we reverse the trial court's judgment and remand this cause

to the trial court for further proceedings consistent with this opinion.

**JUDGMENT REVERSED AND CAUSE REMANDED.**

## JUDGMENT ENTRY

It is ordered that the JUDGMENT BE REVERSED AND THE CAUSE BE REMANDED for further proceedings consistent with this opinion. Appellee shall pay the costs herein taxed.

The Court finds that there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Scioto County Common Pleas Court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.

Abele, P.J., and Harsha, J.: Concur in Judgment and Opinion.


For the Court


BY:_____
        Roger L. Kline, Judge



### NOTICE TO COUNSEL

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**