[Cite as *Darby v. Cincinnati*, 2014-Ohio-2426.]

# IN THE COURT OF APPEALS
## FIRST APPELLATE DISTRICT OF OHIO
## HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| ANDREA DARBY, | : | APPEAL NO. C-130430 |
| | | TRIAL NO. A-1300324 |
| Plaintiff-Appellee, | : | |
| vs. | : | |
| | | *O P I N I O N.* |
| CITY OF CINCINNATI, | : | |
| Defendant-Appellant. | : | |

Civil Appeal From:  Hamilton County Court of Common Pleas

Judgment Appealed From Is:  Reversed and Cause Remanded

Date of Judgment Entry on Appeal:  June 6, 2014

*The Keating Law Firm, Ltd.*, and *Bradley D. Keating*, for Plaintiff-Appellee,

*Terrance Nestor*, Interim City Solicitor, and *Jessica L. Powell*, Assistant City Solicitor, for Defendant-Appellant.

Please note: we have removed this case from the accelerated calendar.

**DINKELACKER, Judge**.

{¶1} Defendant-appellant the city of Cincinnati appeals the decision of the Hamilton County Court of Common Pleas overruling its motion to dismiss on the basis of sovereign immunity the complaint filed against it by plaintiff-appellee Andrea Darby. We find merit in the city's assignment of error, and we reverse the trial court's judgment.

{¶2} The record shows that Darby filed a complaint against the city in which she alleged that on January 14, 2011, she was operating a motor vehicle on Laidlaw Avenue in the city of Cincinnati. According to Darby, the city failed to properly maintain a marked stop sign at the intersection of Laidlaw Avenue and Oakdale Avenue, "whereupon it negligently and carelessly caused" her vehicle to collide with the vehicle operated by a third party. She further alleged that the city had prior notice of the improperly maintained stop sign, and that, as a direct and proximate result of the city's negligence, she incurred bodily injury.

{¶3} The city filed a motion to dismiss under Civ.R. 12(B)(6) in which it argued that it was immune from liability under R.C. 2744.01 et seq. The trial court overruled the city's motion, and its judgment is a final, appealable order under R.C. 2744.02(C). *See Hubbell v. Xenia*, 115 Ohio St.3d 77, 2007-Ohio-4839, 873 N.E.2d 878, syllabus. The city has filed a timely appeal from that judgment.

{¶4} In its sole assignment of error, the city contends that the trial court erred in denying its motion to dismiss the complaint. It argues that it is entitled to immunity because it was engaging in a governmental function under R.C. 2977.01(C) and that no exceptions to immunity apply. This assignment of error is well taken.

{¶5} A Civ.R. 12(B)(6) motion to dismiss tests the sufficiency of the complaint. In ruling on such a motion, the trial court must take all of the allegations

in the complaint as true and draw all reasonable inferences in favor of the nonmoving party. *Mitchell v. Lawson Milk Co.*, 40 Ohio St.3d 190, 192, 532 N.E.2d 753 (1988); *Evans v. Thrasher*, 1st Dist. Hamilton No. C-120783, 2013-Ohio-4776, ¶ 13. It may dismiss a complaint on a Civ.R. 12(B)(6) motion only when the plaintiff can prove no set of facts that would entitle the plaintiff to relief. *O'Brien v. Univ. Community Tenants Union, Inc.*, 42 Ohio St.2d 242, 327 N.E.2d 753 (1975), syllabus; *Evans* at ¶ 13. The court should not rely on evidence outside of the pleadings, but it may consider materials that are referred to or incorporated into the complaint. *State ex rel. Hanson v. Guernsey Cty. Bd. of Commrs.*, 65 Ohio St.3d 545, 548, 605 N.E.2d 378 (1992); *Evans* at ¶ 13.

{¶6} The determination of whether a political subdivision is entitled to immunity under R.C. Chapter 2744 involves a three-tiered analysis. *Colbert v. Cleveland*, 99 Ohio St.3d 215, 2003-Ohio-3319, 790 N.E.2d 781, ¶ 7; *Munday v. Lincoln Hts.*, 1st Dist. Hamilton No. C-120431, 2013-Ohio-3095, ¶ 18. The first tier is the general rule that a political subdivision is immune from liability incurred in performing either a governmental or proprietary function. R.C. 2744.02(A)(1); *Colbert* at ¶ 7; *Munday* at ¶ 19. But that immunity is not absolute. The second tier requires a court to determine whether any of the five exceptions to immunity listed in R.C. 2744.02(B) apply to expose a political subdivision to liability. *Colbert* at ¶ 7-8; *Munday* at ¶ 19. If any exception to immunity applies, then the third tier of the analysis requires a court to determine if any of the statutory defenses against liability apply. *Colbert* at ¶ 9; *Munday* at ¶ 19.

{¶7} Governmental functions include "[t]he regulation of the use of, and the maintenance and repair of, roads, highways, streets, avenues, alleys, sidewalks, bridges, aqueducts, viaducts, and public grounds." R.C. 2944.01(C)(2)(e). They also

include "[t]he regulation of traffic, and the erection or nonerection of traffic signs, signals or control devices." R.C. 2944.01(C)(2)(j). The regulation of traffic is a governmental function, and the city is entitled to blanket immunity under the first tier of the analysis unless an exception to immunity applies. *See Parker v. Upper Arlington*, 10th Dist. Franklin No. 05AP-695, 2006-Ohio-1649, ¶ 12-13.

{¶8} Darby contends the city's conduct fell within the exception to immunity set forth in R.C. 2744.02(B)(3). It provides that "[e]xcept as otherwise provided in R.C. 3746.24 of the Revised Code, political subdivisions are liable for injury, death, or loss to person or property caused by their negligent failure to keep public roads in repair and other negligent failure to remove obstructions from public roads[.]" R.C. 2744.01(H) defines "public roads" as "public roads, highways, streets, avenues, alleys, and bridges within a political subdivision. 'Public roads' does not include berms, shoulders, rights-of-way, or traffic control devices unless the traffic control devices are mandated by" the Ohio Manual of Uniform Traffic Control Devices ("OMUTCD").

{¶9} OMUTCD has been adopted as the state's official specifications for highway signs and markings under the mandate of R.C. 4511.09. *White v. Ohio Dept. of Transp.*, 56 Ohio St.3d 39, 41, 564 N.E.2d 462 (1990). Local authorities must place and maintain traffic control devices according to the manual under R.C. 4511.11. *Winwood v. Dayton*, 37 Ohio St.3d 282, 284, 525 N.E.2d 808 (1988); *Maple Hts. v. Smith*, 131 Ohio App.3d 406, 408, 722 N.E.2d 607 (8th Dist.1999). Compliance with the OMUTCD is an issue of law that this court can determine. *Hopkins v. Porter*, 3d Dist. Mercer No. 10-13-17, 2014-Ohio-757, ¶ 61.

{¶10} The OMUTCD is organized to differentiate between standards, which are mandatory, and guidelines, which are discretionary.

[The OMUTCD] contains mandatory, advisory, and permissive conditions, differentiated by the use of the terms "shall," "should," and "may." Standards using the word "shall" are considered mandatory. Standards using the word "should" are considered to be advising, but not mandating, the particular signage or other device. Standards using the word "may" carry no requirement or recommendation.

*Shope v. Portsmouth,* 4th Dist. Scioto No. 11CA3459, 2012-Ohio-1605, ¶ 23, citing *Webb v. Edwards,* 165 Ohio App.3d 158, 2005-Ohio-6379, 845 N.E.3d 530, ¶ 23 (4th Dist.).

{¶11} Section 2B.05 of the OMUTCD, entitled "STOP Sign Application," provides:

STOP signs should be used if engineering judgment indicates that one or more of the following conditions exist:

A. Intersection of a less important road with a main road where application of the normal right-of-way rule would not be expected to provide reasonable compliance with the law:

B. Street entering a through highway or street (O.R.C. Section 4511.65 provides information on through highways (see Appendix B2));

C. Unsignalized intersections in a signalized area;

D. High speeds, restricted view, or crash records indicate a need for control by the STOP sign.

{¶12} The OMUTCD states that stop signs "should" be used if engineering judgment indicates that one or more of the listed conditions exists. It is devoid of any language indicating that stop sign placement at an intersection is ever mandated. *See Yonkings v. Piwinski,* 10th Dist. Franklin No. 11AP-07, 2011-Ohio-6232, ¶ 24.

{¶13} The General Assembly explicitly excluded traffic control devices from the definition of a "public road" unless the device was mandated by the OMUTCD. "By its clear language, it is evident that the General Assembly did not intend all erected traffic control devices to be considered part of a public road." *Walters v. Columbus*, 10th Dist. Franklin No. 07AP-917, 2008-Ohio-4258, ¶ 20. Thus, the placement of the stop signs is discretionary, not mandatory. *See id.* at ¶ 20-22.

{¶14} Because the placement of the stop sign in this case is discretionary, it is not a traffic control device mandated by the OMUTCD, and it is not included in the definition of a "public road" as that term is used in R.C. 2744.01(H). Therefore, the immunity exception contained in R.C. 2744.03(B)(3) does not apply. *See id.* at ¶ 23.

{¶15} Darby argues that while placement of the stop sign is discretionary, the OMUTCD provides that maintenance of the stop sign is mandatory. She relies upon *Franks v. Lopez*, 69 Ohio St.3d 345, 632 N.E.2d 502 (1994), in which the Ohio Supreme Court stated, "While the installation of traffic control devices by a political subdivision may be discretionary pursuant to the manual, once the decision to install has been made, the implementation of that decision is not immune from liability." *Id.* at 349.

{¶16} But R.C. 2744.02(B)(3) was amended effective in 2003, after the decision in *Franks*. Prior to the amendment, the statute provided that political subdivisions were liable for injury, death or loss cause by their failure to keep public roads "free from nuisance." In the amendment, the legislature removed the "nuisance" language and replaced it with language stating that political subdivisions are liable for their "failure to remove obstructions from public roads." *See Rastaedt v. Youngstown*, 7th Dist. Mahoning No. 12 MA 82, 2013-Ohio-750, ¶ 22; *Shope,* 4th Dist. Scioto No. 11CA3459, 2012-Ohio-1605, at ¶ 29.

{¶17} The Ohio Supreme Court found the legislature's amendment to be significant. In rejecting the argument that the amended statute imposed the same duty of care as the pre-amendment statute, it stated:

> [W]e believe that the General Assembly purposely replaced the phrase "free from nuisance" with "other negligent failure to remove obstructions." To find otherwise is to conclude that the legislature's action in amending the statute was a superfluous act.
>
> We are persuaded that the legislature's action in amending R.C. 2744.02(B)(3) was not whimsy but a deliberate effort to limit political subdivisions' liability for injuries and deaths on their roadways.

*Howard v. Miami Twp. Fire Div.*, 119 Ohio St.3d 1, 2008-Ohio-2792, 891 N.E.2d 311, ¶ 25-26.

{¶18} In contending that *Franks* still applies, Darby relies on a case from the Sixth Appellate District, *Butler v. City Comm.*, 6th Dist. Erie No. E-10-026, 2011-Ohio-1143. It applied *Franks* in affirming a trial court's decision denying the city's motion for summary judgment on the basis of immunity, but it did not mention the 2003 statutory amendment.

{¶19} Other courts have disagreed and have held that reliance on *Franks* was misplaced given the 2003 amendment. *See Rastaedt*, 7th Dist. Mahoning No. 12 MA 82, 2013-Ohio-750, at ¶ 24-25; *Shope*, 4th Dist. Scioto No. 11CA3459, 2012-Ohio-1605, at ¶ 29*; Hale v. CSX Transp.*, 2d Dist. Montgomery Nos. 22546, 22547 and 22592, 2008-Ohio-5644, ¶ 48-49; *Walters*, 10th Dist. Franklin No. 07AP-917, 2008-Ohio-4258, at ¶ 16-18. We agree with the reasoning of those courts.

{¶20} Because the placement of the stop sign is discretionary under the OMUTCD, it is not included in the definition of a "public road" as defined in R.C.

2744.02(B)(3). Therefore, the exception to immunity set forth in R.C. 2744.02(B)(3) does not apply. Because no exception to the general rule of immunity applies, we need not reach the third tier of the immunity analysis. *See Colbert*, 99 Ohio St.3d 215, 2003-Ohio-3319, 790 N.E.2d 781, at ¶ 15; *Munday*, 1st Dist. Hamilton No. C-120431, 2013-Ohio-3095, at ¶ 19.

{¶21} Taking all of the allegations of Darby's complaint as true, we find that she can prove no set of facts that would entitle her to relief. Therefore, the trial court erred in denying the city's Civ.R. 12(B)(6) motion to dismiss. We sustain the city's sole assignment of error. We reverse the trial court's judgment and remand the cause to the trial court for further proceedings.

Judgment reversed and cause remanded.

**HENDON, P.J.,** and **FISCHER, J.,** concur.

Please note:

The court has recorded its entry on the date of the release of this opinion.