Pfeifer, J.
I. Background
{¶ 1} In May 2011, Jill Stevenson failed to stop at a stop sign at the intersection of Wilson Street and East Sandusky Street in Findlay. She collided with appellant Gary Bibler, who had the right-of-way while traveling on East Sandusky Street, which is a state through highway. Stevenson claims that she did not see the stop sign because it was blocked by tree foliage. An officer with the Findlay Police Department investigated and determined that the sign was significantly obstructed from a distance as a driver approached it.
{¶ 2} Bibler and his wife, Yvonne Bibler, filed a complaint alleging that Stevenson was negligent for failing to stop and that appellee, the city of Findlay, was negligent for failing to ensure that the stop sign was visible. In ruling on Findlay’s motion for summary judgment, the trial court concluded that Findlay was entitled to statutory political-subdivision immunity and that the Biblers had not established that an exception to immunity applies. Accordingly, the court dismissed Findlay from the case. Subsequently, the Biblers and Stevenson settled the claims against her.
{¶ 3} The Biblers appealed the grant of summary judgment in favor of Findlay, asserting that Findlay was not immune from liability. The court of appeals disagreed in a split decision, stating that the “narrow question” is “whether the stop sign in this case is considered a ‘public road’ for the purposes of sovereign *145 immunity” and concluding that “the answer is no.” 2015-Ohio-3717, 38 N.E.3d 952, ¶ 30 (3d Dist.).
{¶ 4} We accepted the Biblers’ discretionary appeal. 144 Ohio St.3d 1504, 2016-Ohio-652, 45 N.E.3d 1049.
II. Analysis

A. R.C. Chapter 27kh and related definitions

{¶ 5} R.C. Chapter 2744 sets forth the circumstances under which political subdivisions, acting through their employees, are susceptible to suit in tort.
{¶ 6} R.C. 2744.02(B)(3), as relevant to this case, states that, “political subdivisions are hable for injury, death, or loss to person or property caused by their negligent failure to keep public roads in repair and other negligent failure to remove obstructions from public roads.” This is the only statute under which the Biblers assert that Findlay is liable.
{¶ 7} R.C. 4511.01(QQ) defines “traffic control device” as a “sign, signal, marking, or other device used to regulate, warn, or guide traffic, placed on, over, or adjacent to a street * * * by authority of a public agency or official having jurisdiction.” Under this provision, a stop sign is a traffic-control device.
{¶ 8} R.C. 2744.01(H) defines “public roads” as “public roads, highways, streets, avenues, alleys, and bridges within a political subdivision.” R.C. 2744.01(H) also states that “public roads” do not include “berms, shoulders, rights-of-way, or traffic control devices unless the traffic control devices are mandated by the Ohio manual of uniform traffic control devices.” This provision clearly demarcates the central issue: the stop sign falls outside the definition of a public road unless it is “mandated by the Ohio manual of uniform traffic control devices” (“OMUTCD”).
{¶ 9} R.C. 4511.65(A) states that “stop signs, yield signs, or traffic control signals shall be erected at all intersections with * * * through highways * * * by local authorities as to highways under their jurisdiction.” This provision is part of the Revised Code, it is not part of the OMUTCD.

B. When is a traffic-control device mandated?

{¶ 10} Based on the statutory scheme governing this case, Findlay is immune from liability unless it negligently failed to keep a public road in repair. R.C. 2744.02(B)(3). No other basis for Findlay’s potential liability has been proffered.
{¶ 11} We believe that the court of appeals properly focused on whether the traffic-control device at issue, a stop sign, was mandated. The only aspect of the public road that is in question is the stop sign. Pursuant to R.C. 2744.01(H), a stop sign is excluded from the definition of a public road unless it is mandated by the OMUTCD.
*146 {¶ 12} The court of appeals correctly determined that a stop sign was mandated at the intersection by R.C. 4511.65. East Sandusky Street in Findlay is also State Route 586. Neither party disputes that East Sandusky Street is a state through highway nor that Findlay is responsible for the traffic-control devices used at the intersection of East Sandusky Street and Wilson Street. R.C. 4511.65(C) states that local authorities need not erect a stop sign at a through-highway intersection if the intersection is constructed “to permit traffic to safely enter a through highway without coming to a stop.” The intersection in this case has a stop sign on Wilson Street.
{¶ 13} R.C. 4511.11(A) provides:
Local authorities in their respective jurisdictions shall place and maintain traffic control devices in accordance with the department of transportation manual of uniform system of traffic control devices, adopted under section 4511.09 of the Revised Code, upon highways under their jurisdiction as are necessary to indicate and to carry out section 4511.01 to 4511.76 and 4511.99 of the Revised Code, local traffic ordinances, or to regulate, warn, or guide traffic.
{¶ 14} However essential stop signs are to safety and efficiency, we do not disagree with the statement made by the court of appeals in this case that nothing in the version of the OMUTCD that was in place when the accident occurred specifically and affirmatively indicated that the erection of any stop sign is ever mandatory. See, e.g., OMUTCD Section 2B.05 (2005 Ed., Revision 2) (stating that stop signs “should” be used in certain situations). To be blunt, we would consider this omission indefensible but for R.C. 4511.65(A) and 4511.11(A), which clearly contemplate the mandatory nature of stop signs or other traffic-control devices at intersections involving through highways. (“Through highways” are not defined in the OMUTCD; they are defined in R.C. 4511.65(A).)
{¶ 15} The OMUTCD does not exist in a vacuum. It is a creature of the Revised Code, it is subservient to the Revised Code, and it necessarily incorporates the Revised Code. Its drafters were, of course, aware of the mandatory language of R.C. 4511.65(A) and knew that it relates to the application and placement of stop signs. In fact, Section 2B.05 of the version of the OMUTCD at issue in this case, titled “STOP Sign Applications” (capitalization sic), specifically refers to R.C. 4511.65 and also refers to an appendix to the OMUTCD that contains the full text of that statute. That the relevant version of the OMUTCD did not explicitly state that the placement of stop signs at intersections involving through highways is mandated does not cause R.C. 4511.65 to disappear or somehow become other than mandatory. (Although we focus on “stop signs” *147 because a stop sign is the key factor in this case, R.C. 4511.65(A) refers to “stop signs, yield signs, [and] traffic control signals.”)
{¶ 16} The OMUTCD cannot override the clear mandates of a provision of the Revised Code. Instead, its drafters are authorized and obligated to carry out the requirements of “section 4511.01 to 4511.76 and 4511.99 of the Revised Code.” R.C. 4511.11(A). One of the requirements of R.C. 4511.01 through 4511.76 is the requirement in R.C. 4511.65(A) for the mandatory erection of stop signs (or some other traffic-control device) at intersections involving through highways, subject to certain limited exceptions that are not applicable here.
{¶ 17} That the version of the OMUTCD at issue in this case mistakenly, inadvertently, or intentionally did not precisely align with the language of R.C. 4511.65 when discussing the application and placement of stop signs does not mean that the stop sign in question was not mandated. Clearly it was. R.C. 4511.65(A). Because the stop sign was mandated, it is not excluded from the definition of a public road with respect to R.C. 2744.02(B)(3).
{¶ 18} The OMUTCD is simply the format by which authorities in political subdivisions are made aware of how to comply with statutes, it does not undermine the underlying empowering statutes. How could it? Its drafters have only the authority that was delegated to them, which is to carry out the requirements of R.C. 4511.65 along with many other statutory provisions.

C. Summary judgment

{¶ 19} This case was decided on a motion for summary judgment.
Summary judgment may be granted when “(1) [n]o genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party.”
M.H. v. Cuyahoga Falls, 134 Ohio St.3d 65, 2012-Ohio-5336, 979 N.E.2d 1261, ¶ 12, quoting Temple v. Wean United, Inc., 50 Ohio St.2d 317, 327, 364 N.E.2d 267 (1977), citing Civ.R. 56(C).
{¶ 20} Viewing the evidence most strongly in favor of the Biblers in light of the legal principles applicable to this case, it is apparent that Findlay has not established that it is entitled to judgment as a matter of law regarding its immunity and that reasonable minds could not come to the singular conclusion that Findlay is not liable. The stop sign in this case falls within the definition of a public road, and the accident allegedly occurred because the stop sign was not *148 in repair and was obstructed. Accordingly, we conclude that Findlay is not immune pursuant to R.C. 2744.02(B)(3) and is potentially amenable to liability.
III. Conclusion
{¶ 21} We conclude that Findlay is not immune. We express no opinion about whether Findlay is liable.
{¶ 22} We reverse the judgment of the court of appeals and remand the cause to the trial court for further proceedings consistent with this opinion.
Judgment reversed and cause remanded.
O’Connor, C.J., and O’Neill, JJ., concur.
O’Donnell, J., concurs in judgment only.
Lanzinger, J., dissents, with an opinion joined by Kennedy and French, JJ.