[Cite as *Bartchak v. Columbia Twp.*, 2018-Ohio-2991.]

STATE OF OHIO         )               IN THE COURT OF APPEALS
                          )ss:       NINTH JUDICIAL DISTRICT
COUNTY OF LORAIN    )

THERESE M. BARTCHAK, et al.            C.A. No.     17CA011096

     Appellees

     v.                                APPEAL FROM JUDGMENT
                                  ENTERED IN THE
COLUMBIA TOWNSHIP AND       COURT OF COMMON PLEAS
LIVERPOOL TOWNSHIP             COUNTY OF LORAIN, OHIO
                                  CASE No.    14-CV-183647

     Appellants

DECISION AND JOURNAL ENTRY

Dated: July 30, 2018

HENSAL, Presiding Judge.

{¶1}    Columbia Township and Liverpool Township appeal a judgment entry of the Lorain County Court of Common Pleas that denied their motions for summary judgment. For the following reasons, this Court reverses.

I.

{¶2}    Four teenagers died after using a railroad crossing to make their car go airborne, veering off the road after landing, and colliding with a tree. The parents of three of the children sued Columbia Township and Liverpool Township for wrongful death because the road the teens were driving on bordered those townships. Following discovery, the Townships moved for summary judgment, arguing that they are immune from liability under Revised Code Section 2744.02. The trial court granted their motions in part, but denied them as to the parents' claims that the Townships failed to remove obstructions from the road, failed to keep the road in repair,

and failed to have mandatory road markings.  The Townships have appealed, jointly assigning two errors.

## II.

### ASSIGNMENT OF ERROR I

THE TRIAL COURT ERRED AS A MATTER OF LAW IN DETERMINING THERE WERE GENUINE ISSUES OF MATERIAL FACT AS TO WHETHER THE DESIGN OF THE BOSTON ROAD AT THE INTERSECTION OF THE RAILROAD TRACKS CONSTITUTED AN OBSTRUCTION.

{¶3}    The Townships argue that the trial court should have granted them summary judgment on all of the parents' claims because they have political subdivision immunity.  Under Civil Rule 56(C), summary judgment is appropriate if:

> (1) [n]o genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party.

*Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327 (1977).  To succeed on a motion for summary judgment, the movant bears the initial burden of demonstrating that there are no genuine issues of material fact concerning an essential element of the opponent's case.  *Dresher v. Burt*, 75 Ohio St.3d 280, 292 (1996).  If the movant satisfies this burden, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial."  *Id*. at 293, quoting Civ.R. 56(E).  This Court reviews an award of summary judgment de novo.  *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105 (1996).

{¶4}    "Determining whether a political subdivision is immune from liability under [Chapter 2744] * * * involves a three-tiered analysis."  *Lambert v. Clancy*, 125 Ohio St.3d 231, 2010-Ohio-1483, ¶ 8.  "The starting point is the general rule that political subdivisions are immune from tort liability[.]"  *Shalkhauser v. Medina*, 148 Ohio App.3d 41, 2002-Ohio-222, ¶

14 (9th Dist.). Under Section 2744.02(A)(1), "a political subdivision is not liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by any act or omission of the political subdivision * * * in connection with a governmental or proprietary function." "At the second tier, this comprehensive immunity can be abrogated pursuant to any of the five exceptions set forth at R.C. 2744.02(B)." *Shalkhauser* at ¶ 16. "Finally, immunity lost to one of the R.C. 2744.02(B) exceptions may be reinstated if the political subdivision can establish one of the statutory defenses to liability" contained in Section 2744.03(A). *Id.*

{¶5}   The parties agree that the Townships are political subdivisions and that the maintenance and repair of roads is a governmental function. R.C. 2744.01(C)(2)(e); R.C. 2744.01(F). The parents argue that the Townships' immunity is abrogated under Section 2744.02(B)(3), which provides, in part, that "political subdivisions are liable for injury, death, or loss to person or property caused by their negligent failure * * * to remove obstructions from public roads[.]" According to the parents, the condition of the roadway at the railroad crossing was an obstruction to motorists because it was impassable at the legal speed limit.

{¶6}   The term "obstructions" is not defined in Chapter 2744. The Ohio Supreme Court, however, interpreting Section 2744.02(B)(3), has held that "an 'obstruction' must be an obstacle that blocks or clogs the roadway and not merely a thing or condition that hinders or impedes the use of the roadway or that may have the potential to do so." *Howard v. Miami Twp. Fire Div.*, 119 Ohio St.3d 1, 2008-Ohio-2792, ¶ 30. In reaching that conclusion, the Supreme Court noted that Section 2744.02(B)(3) had previously required political subdivisions to keep roads "free from nuisance[.]" (Emphasis omitted.) *Id.* at ¶ 24. It reasoned that, in changing the requirement to "remove obstructions," the legislature made "a deliberate effort to limit political subdivisions' liability for injuries and deaths on their roadways." *Id.* at ¶ 26. It concluded that,

in light of the "more demanding" showing that is required under the amended language, ice that formed on a roadway did not constitute an obstruction because it did not block or clog the road. *Id*. at ¶ 29-30.

{¶7} It is not disputed that the road involved in this case was straight. Before the railroad crossing, there was a 7.9% grade as it rose to the height of the tracks, followed by a downward slope immediately after the crossing. According to the sole teen who survived the collision, the group travelled on the road because it was their intent to use the changes in elevation to make their car go airborne. Following their first "jump," the driver repositioned the car and went over the tracks again, this time losing control and going off the roadway 100 feet after landing on the road. There is no evidence in the record that suggests that there was anything blocking or clogging the road at the time the teens went over the tracks.

{¶8} The teens' parents argue that the term "obstruction" should include any situation in which a motorist cannot safely travel the road at the posted speed limit. They argue that those circumstances exist in this case because the speed limit for the road was 55 miles per hour and experts opined that any car travelling over the tracks at that speed, or at any speed greater than 40 miles per hour, would go airborne.

{¶9} This Court is bound to follow the decisions of the Ohio Supreme Court. *State v. Dickens*, 9th Dist. Lorain No. 07CA009218, 2008-Ohio-4404, ¶ 25. In *Howard*, it specifically defined "obstruction" as something that "blocks or clogs the roadway" and excluded "a thing or condition that [merely] hinders or impedes the use of the roadway[.]" *Howard*, 119 Ohio St.3d 1, 2008-Ohio-2792, at ¶ 30; *see also Pelletier v. City of Campbell*, Slip Opinion No. 2018-Ohio-2121, ¶ 25, 28 (adhering to *Howard* and concluding that city did not fail to remove an obstruction from a stop sign because there was no foliage on the sign). To construe the elevation

changes of the road at the railroad crossing as an obstruction merely because it was a hazard would require this Court to ignore the direction of the Ohio Supreme Court and construe Section 2744.02(B)(3) as still containing the "nuisance" language that the legislature replaced. We have no authority to do so. *See id*. at ¶ 20, 32. Upon review of the record, we conclude that the trial court incorrectly determined that the "intersection of the tracks and roadway could constitute an obstruction" and that it incorrectly denied the Townships' motions for summary judgment on this issue. The Townships' first assignment of error is sustained.

## ASSIGNMENT OF ERROR II

THE TRIAL COURT ERRED AS A MATTER OF LAW IN DETERMINING THERE WERE GENUINE ISSUES OF MATERIAL FACT AS TO WHETHER BOSTON ROAD WAS IN REPAIR AT THE SUBJECT RAILROAD INTERSECTION WHEN NEITHER THE CONDITION OF THE ROAD NOR SIGNAGE CONTRIBUTED TO THE ACCIDENT.

{¶10} The Townships also argue that they are entitled to immunity on the parents' claim that the road was not "in repair" under Section 2744.02(B)(3). That section provides, in part, that "political subdivisions are liable for injury, death, or loss to person or property caused by their negligent failure to keep public roads in repair[.]" The teens' parents argued that the road was not "in repair" because it could not be safely travelled at the posted speed limit and because it was lacking mandatory traffic control devices.

{¶11} The term "in repair" is not defined in Chapter 2744, but the Ohio Supreme Court has recently defined it by its dictionary meaning, which is "the state of being in good or sound condition." *Pelletier* at ¶ 19, quoting Webster's Third New International Dictionary 1923 (2002). The Townships argue that the phrase refers only to the surface condition of the roadway, not its overall design. They also argue that any problems with the surface of the road were not the reason the car left the roadway and collided with the tree. The parents, citing this Court's

decision in *Sanderbeck v. County of Medina*, 9th Dist. Medina No. 09CA0051-M, 2010-Ohio-3659, argue that a road is not in repair if it cannot be safely travelled at the legal speed limit.

{¶12} In *Sanderbeck*, a car left a road while navigating an "S" curve. *Id*. at ¶ 1. Mr. Sanderbeck's expert opined that the road was in disrepair because the "critical speed" of the road was at or below the legal speed limit. *Id*. at ¶ 5. The county argued that the "in repair" language under Section 2744.02(B)(3) referred only to surface conditions such as ruts, potholes, or crumbling pavement. *Id*. at ¶ 7. This Court, in affirming the trial court's denial of summary judgment to the county, did not resolve whether the expert's "critical speed" analysis would support a finding that a road was not "in repair" under Section 2744.02(B)(3), because it noted that, even under the County's more limited definition, the expert had testified that the road "was 'deteriorated' in the area where the [driver] lost control of his vehicle." *Id*. at ¶ 8. *Sanderbeck*, therefore, does not support the parents' argument.

{¶13} Before the amendments to Section 2744.02(B)(3), the Ohio Supreme Court noted that its "nuisance" analysis "focused on whether the alleged nuisance rendered the roadway unsafe for the usual and ordinary modes of travel." *Manufacturer's Nat'l Bank v. Erie Cty. Rd. Comm.*, 63 Ohio St.3d 318, 321 (1992). Now that the statute has been amended to replace "free from nuisance" with "remove obstructions" and the Ohio Supreme Court has defined "obstructions" narrowly, the parents' argument attempts to preserve the old definition of nuisance by transferring it to the "in repair" language that the legislature did not modify. In *Pelletier*, however, the Ohio Supreme Court focused on whether the part of the public road at issue, a stop sign, was in "good or sound condition" or whether it was "deteriorated or disassembled." *Pelletier* at ¶ 21.

{¶14} The teens' parents have not identified any precedent in which a road was considered out of repair simply because of its slope. In addition, it is not disputed that the approach and retreat of the road from the railroad crossing were designed and constructed in that fashion. The Ohio Supreme Court has recognized that political subdivisions are immune from design and construction defects because they involve discretionary functions under Section 2744.03(A)(3) and (5). *Franks v. Lopez*, 69 Ohio St.3d 345, 349-350 (1994). Although one of the parents' experts testified that the crossing was not as level as possible and that an improper slope "could be a design issue [or] it could be a maintenance issue[,]" he did not explain why the allegedly improper slope of the road in this case should be considered a maintenance issue. Furthermore, although he also testified that the tracks were not even with the road, causing the crossing to be "rough," he did not explain how the unevenness of the tracks contributed to the teen driver's loss of control. We, therefore, conclude that his testimony does not create a genuine issue of material fact regarding whether the road was "in repair" on the night of the collision.

{¶15} The teens' parents next argue that the road was not in repair because there was surface damage to the road after the railroad crossing. It is not disputed that there were a number of gouges in the road from other cars that had gone over the tracks and bottomed out on the far side. The parents, however, did not submit any evidence that the teens' car made contact with any of those gouges. According to the accident reconstruction expert, the gouge that the teens' car made in the road was 15 feet beyond any of the previous gouges. One of the parents' experts also opined that nothing about the surface condition of the road contributed to the collision. Upon review, we conclude that the teens' parents have not pointed to any evidence in the record

that creates a genuine issue of material fact regarding whether the surface of the road that the teens' car actually travelled on was in disrepair. R.C. 2744.02(B)(3).

{¶16} Regarding the parents' argument that the road was not in repair because it did not have some mandatory traffic control devices, Section 2744.01(H) provides that a "[p]ublic road[ ]" does not include "traffic control devices unless the traffic control devices are mandated by the Ohio manual of uniform traffic control devices." Traffic-control devices that are mandated by statute are also included, even if they are not in the manual. *Bibler v. Stevenson*, 150 Ohio St.3d 144, 2016-Ohio-8449, ¶ 17. The Townships do not deny that the road was missing some mandatory traffic control devices leading up to the railroad crossing, but they argue that the missing devices did not cause the collision.

{¶17} The teens' parents argue that before the railroad crossing the road was required to have an X, the letters RR, no-passing zone markings, and certain transverse lines. Because the crossing was equipped with active control devices, the road was also required to have a stop line that indicated the point at which vehicles were required to stay behind while a train was passing through. They further argue that the retro-reflectivity of the signage that was present was not in compliance with the manual's requirements.

{¶18} The signs and markings required by the manual appear to be intended to alert drivers to the fact that there is a railroad crossing approaching. The teens, however, were fully aware of the crossing and, according to the one who survived the collision, took the road for the specific purpose of going over the tracks. She also indicated that the driver of the car did not lose control until his second crossing of the tracks.

{¶19} Upon review of the record, there is nothing in it that suggests the collision would have been avoided if the mandatory traffic control devices existed. One expert testified that the

teens might have been deterred from jumping the tracks if there was a stop sign immediately before the crossing, but such a stop sign was not required by the manual of uniform traffic control devices. Accordingly, the fact that there was no stop sign present did not make the road out of repair. We conclude that the teens' parents did not demonstrate that there is a genuine issue of material fact as to whether the absence of mandatory traffic control devices contributed to the teen driver's loss of control. The trial court, therefore, incorrectly denied summary judgment to the Townships on the parents "in repair" claim. The Townships' second assignment of error is sustained.

## III.

**{¶20}** The Townships established as a matter of law that the exception to political subdivision immunity under Section 2744.02(B)(3) does not apply in this case. The trial court, therefore, incorrectly denied parts of their motions for summary judgment. The Townships' assignments of error are sustained, and the judgment of the Lorain County Court of Common Pleas is reversed.

Judgment reversed,
and cause remanded.

————

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the

period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellees.

---
JENNIFER HENSAL
FOR THE COURT


SCHAFER, J.
CONCURS.

CARR, J.
DISSENTS.

{¶21} I respectfully dissent. This case involves a heart breaking situation where four teenagers tragically lost their lives when their vehicle went airborne after crossing railroad tracks. The parents of three teenagers sued the Townships. The Townships filed a motion for summary judgment arguing that it was entitled to sovereign immunity. The trial court ultimately denied the motion on the basis that there was a question of material fact. The sole issue in this interlocutory appeal is whether the Townships are immune from liability under R.C. 2744 et seq.

{¶22} It is well-established that an appeal pursuant to R.C. 2744.02(C) is limited to the issue of governmental immunity. *Calet v. East Ohio Gas Co.*, 9th Dist. Summit No. 28036, 2017-Ohio-348, ¶ 13; *Davis v. Akron*, 9th Dist. Summit No. 27014, 2014-Ohio-2511, ¶ 12; *Sheperd v. Akron*, 9th Dist. Summit No. 26266, 2012-Ohio-4695, ¶ 12; *McGuire v. Lorain*, 9th Dist. Lorain No. 10CA009893, 2011-Ohio-3887, ¶ 3; *Devaux v. Albrecht Trucking Co.*, 9th Dist. Medina No. 09CA0069-M, 2010-Ohio-1249, ¶ 7. Thus, for example, in *Riffle v. Physicians &*

*Surgs. Ambulance*, 9th Dist. Summit No. 27449, 2016-Ohio-94, this Court refused to address the appellants' alternative arguments that their actions were not the proximate cause of the injury at issue. *Id*. at ¶ 10. This approach is warranted by the plain language of R.C. 2744.02(C), and it is consistent with the fundamental distinction between immunity from suit and non-liability.

**{¶23}** As the majority recognizes, R.C. 2744.02(A)(1) confers "comprehensive immunity" upon political subdivisions in connection with the performance of governmental and proprietary functions. *See Shalkhauser v. Medina*, 148 Ohio App.3d 41, 2002-Ohio-222, ¶ 19 (9th Dist.). "Immunity" denotes an exemption from duty or liability. *See Black's Law Dictionary* 765 (8th Ed.2004). Thus, in *Agrabrite v. Neer*, 149 Ohio St.3d 349, 2016-Ohio-8374, the Ohio Supreme Court articulated the distinction between immunity and non-liability. "When a plaintiff files a civil action against an employee of a political subdivision, the employee's entitlement to statutory immunity is a separate question from the plaintiff's ability to establish the elements of his or her claim." *Id*. at ¶ 10. More specifically, the Supreme Court noted that failure to establish the requirements of immunity under R.C. Chapter 2744 would deprive a defendant of statutory *immunity*, but whether the element of proximate cause had been established would function to determine *liability*. *Id*. In other words, a defendant could fail to establish immunity under R.C. Chapter 2744, but could ultimately be found not to be liable if a plaintiff failed to establish the elements of the relevant claims, including causation. *Id*.

**{¶24}** This distinction – and the nature of immunity as an exemption from liability – means that a political subdivision's immunity does not depend on whether plaintiffs can establish the elements of their tort claims. Immunity exempts a political subdivision from liability before the elements of the claims are considered. This is why the denial of immunity is a matter of such magnitude, and it is why orders that deny immunity can be immediately appealed and should,

therefore, occur early in the litigation, "prior to investing the time, effort, and expense of the courts, attorneys, parties, and witnesses[.]" *Hubbell v. Xenia*, 115 Ohio St.3d 77, 2007-Ohio-4839, ¶ 26. Unfortunately, the nature of the Townships' arguments on appeal has resulted in a blurring of the distinction between proximate cause and immunity in this case.

**{¶25}** In construing the evidence in the light most favorable to the teenagers' parents, the nonmoving party, the trial court here ruled "that the intersection of the tracks and roadway could constitute an obstruction since there is evidence tending to show it could not be traversed safely at the stated speed limit and as a result posed a significant and dangerous hazard to person and property." I agree. While the Supreme Court has said that an obstruction must block or clog the roadway, the high court has not said that the obstruction must be an actual physical object in the road. *See Pelletier v. City of Campbell*, Slip Opinion No. 2018-Ohio-2121.

**{¶26}** Moreover, a conventional causation analysis should not enter into the discussion at the summary judgment stage. Even assuming we could entertain the Townships' proximate cause position, there is, at a minimum, a question of fact regarding the proximate cause of the accident in this case. It is well settled that there may be more than one proximate cause of an injury. *Murphy v. Carrollton Mfg. Co.*, 61 Ohio St.3d 585, 587-588 (1991). Here, the Townships do not dispute that the road was missing mandatory traffic control devices leading up to the railroad tracks. The lack of mandatory traffic control devices is significantly probative given that there was expert testimony indicating that a vehicle would go airborne if it was traveling at a speed of 40 miles per hour, and the speed limit on the road in question was 55 miles per hour. In other words, there was expert testimony that the railroad tracks could not be safely crossed at the posted speed limit. Furthermore, there was additional evidence that neighbors complained about the railroad tracks and there was at least one prior serious accident

at that location. This evidence coupled with the physical grooves in the road where cars had landed after going airborne supports the conclusion that the road was either in disrepair or obstructed. Yet, despite the evidence which tended to show that the Townships' trustees knew about the problem with the railroad tracks, the Townships declined to take the necessary steps to resolve the issue. Under these circumstances, the trial court correctly declined to award summary judgment to the Townships as questions of fact remain as to whether the railroad tracks constituted an obstruction and whether the road was in a state of disrepair. For these reasons, I respectfully dissent.

APPEARANCES:

GREGORY A. BECK and MEL L. LUTE, JR., Attorneys at Law, for Appellants.

ABRAHAM CANTOR, Attorney at Law, for Appellants.

KENNETH P. ABBARNO, and MICHAEL A. SALTZER, Attorneys at Law, for Appellees.