[Cite as *Buchenroth v. Cincinnati*, 2019-Ohio-2560.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO


| | | |
|---|---|---|
| DANIEL P. BUCHENROTH, | : | APPEAL NO. C-180289<br>TRIAL NO. A-1800082 |
| Plaintiff-Appellee, | | |
| | : | *O P I N I O N.* |
| vs. | | |
| CITY OF CINCINNATI, | : | |
| Defendant-Appellant. | : | |


Civil Appeal From:  Hamilton County Court of Common Pleas

Judgment Appealed From Is:  Reversed and Cause Remanded

Date of Judgment Entry on Appeal:  June 26, 2019


*Edward C. Yim*, for Plaintiff-Appellee,

*Paula Boggs Muething*, City Solicitor, and *Marva K. Benjamin*, Assistant City Solicitor, for Defendant-Appellant.

**CROUSE, Judge.**

{¶1}    The city of Cincinnati ("city") has appealed from the trial court's order denying its Civ.R. 12(C) motion for judgment on the pleadings.  In one assignment of error, the city argues that the trial court erred in denying the city's motion for judgment on the pleadings because the city has tort immunity for crosswalk signs and road markings that it provided, which designated a midblock crosswalk for pedestrian travel.  Because we agree that the city is immune from suit, we reverse.

### *Factual Background*

{¶2}    In January 2017, while walking in a marked midblock crosswalk located near 249 Calhoun Street in Cincinnati, plaintiff-appellee Daniel Buchenroth was hit by a car driven by Robert Weber.  Buchenroth brought suit against Weber, Blue Cross and Blue Shield, the city of Cincinnati, and the Cincinnati Division of Traffic and Engineering.  This case concerns only Buchenroth's claims against the city.  Buchenroth's complaint alleges that the city was negligent in its inspection, maintenance, repair, design, construction, and erection of crosswalk markings and warning signs that governed pedestrian and vehicular traffic at the crosswalk near 249 Calhoun Street.

### *Political Subdivision Tort Immunity*

{¶3}    The Political Subdivision Tort Liability Act, codified in R.C. Chapter 2744, employs a three-part analysis to determine the tort liability of political subdivisions.  First, political subdivisions are generally granted immunity from liability for injury or death in connection with their performance of a governmental

or proprietary function. *Howard v. Miami Twp. Fire Div.,* 119 Ohio St.3d 1, 2008-Ohio-2792, 891 N.E.2d 311, ¶ 18. Second, the court considers whether an R.C. 2744.02(B) exception to that general rule of immunity applies. *Id.* Third, if an exception does apply, then the court must determine whether the city can reestablish immunity by demonstrating another statutory defense. *Id.*

{¶4} It is undisputed that the city is a "political subdivision" as defined in R.C. 2744.01(F), and that the maintenance of crosswalks and traffic-control devices is a governmental function under R.C. 2744.01(C)(2)(e) and (j). This means the city is generally immune from tort liability for the maintenance of crosswalks and traffic-control devices.

{¶5} At issue is whether an R.C. 2744.02(B) exception applies to the general rule of immunity. Buchenroth argues that the "public roads" exception of R.C. 2744.02(B)(3) applies to deprive the city of immunity.

{¶6} R.C. 2744.02(B)(3) provides, in relevant part, that "political subdivisions are liable for injury, death, or loss to person or property caused by their negligent failure to keep public roads in repair and other negligent failure to remove obstructions from public roads * * *."

{¶7} "Public roads" does not include traffic-control devices unless the traffic-control devices are mandated by the Ohio Manual of Uniform Traffic Control Devices ("OMUTCD"). R.C. 2744.01(H). A "traffic control device" includes any sign, signal, marking, or other device used to regulate, warn, or guide traffic, placed on, over, or adjacent to a street or highway. R.C. 4511.01(QQ).

{¶8} It is undisputed that the crosswalk signs and lines in this case are traffic-control devices. The question is whether the crosswalk signs and lines are

mandated by the revised code or the OMUTCD, thereby bringing them within the public-roads exception of R.C. 2744.02(B)(3).

{¶9}    When ruling on a motion for judgment on the pleadings, the court may take judicial notice of appropriate matters without converting the motion to a motion for summary judgment.  *State ex rel. Findlay Publishing Co. v. Schroeder,* 76 Ohio St. 3d 580, 581, 669 N.E.2d 835  (1996).  This includes matters which are "capable of accurate and ready determination by resort to sources whose accuracy cannot be reasonably questioned," and so are "not subject to reasonable dispute."  Evid.R. 201(B).

{¶10} In its memorandum in support of its motion for judgment on the pleadings, the city attached exhibits 2A and 2B, which are photographs of the road, crosswalk, and crosswalk signs where the accident occurred.  During the hearing, Buchenroth stipulated that exhibits 2A and 2B accurately depicted the crosswalk signs and road markings and that the court could take judicial notice of those exhibits.  It is also undisputed, and the exhibits show, that the crosswalk in question is a midblock crosswalk.

### *Crosswalk Signs*

{¶11} Buchenroth argues that Calhoun Street is a through highway with intersections along it, and so the crosswalk signs are mandatory even if the crosswalk is a midblock crosswalk.

{¶12} R.C. 4511.65(A) provides:

All state routes are hereby designated as through highways, provided

that stop signs, yield signs, or traffic control signals shall be erected at

all intersections with such through highways by the department of

transportation * * *. Where two or more state routes that are through highways intersect and no traffic control signal is in operation, stop signs or yield signs shall be erected at one or more entrances thereto * * *.

A plain reading of R.C. 4511.65(A) indicates that traffic-control signals are to be erected at all intersections of through highways.

{¶13} The use of non-vehicular traffic-control signals, such as crosswalk signs, is further governed by OMUTCD 2C.50. The language of section 2C.50 is clear that the placement of crosswalk signs is discretionary, not mandatory. "Non-vehicular warning signs **may** be used to alert road users * * *." (Emphasis added). OMUTCD 2C.50, ¶ 1. Case law supports these interpretations.

{¶14} In *Bibler v. Stevenson*, 150 Ohio St.3d 144, 2016-Ohio-8449, 80 N.E.3d 424, ¶ 20, the Ohio Supreme Court held that the public-road exception applied, and so the city was not immune for failing to properly maintain a stop sign at an intersection of two roads. "Pursuant to R.C. 2744.01(H), a stop sign is excluded from the definition of a public road unless it is mandated by the OMUTCD." *Bibler* at ¶ 11. OMUTCD section 2B.05 indicated that the placement of stop signs was discretionary ("stop signs *should* be used in certain circumstances"). (Emphasis added). *Id.* at ¶ 14.

{¶15} Nevertheless, R.C. 4511.65(A) mandated that "stop signs, yield signs, or traffic control signals *shall* be erected at all intersections with through highways * * *." (Emphasis added). The court found the OMUTCD to be subservient to the Revised Code, and determined that when the two contradicted each other, the Revised Code controlled. *Id.* at ¶ 16. Since the stop sign was located at the

intersection of two through highways, the sign was mandatory under R.C. 4511.65. *Id.* Since the sign was mandatory, it fell within the public-roads exception to immunity. *Id.* at ¶ 17.

{¶16} There is no contradiction between the OMUTCD and the Revised Code in the present case. Therefore, the discretionary language in OMUTCD 2C.50 controls and crosswalk signs are not mandatory.

{¶17} The court reached a similar result in *Deitz v. Harshbarger,* 2017-Ohio-2917, 89 N.E.3d 1271, ¶ 25 (3d Dist.), *appeal not allowed,* 151 Ohio St.3d 1507, 2018-Ohio-365, 90 N.E.3d 948, where it found the stop sign in question to be discretionary, and not mandatory. "Based on the plurality's analysis [in *Bibler*], traffic-control devices are mandated only at intersections involving through highways." *Deitz* at 31. Although the sign was at an intersection, the roads in question were not through highways, and so the court determined that the sign was discretionary under R.C. 4511.65. *Id.* at ¶ 32.

{¶18} In *Walters v. Columbus,* 10th Dist. Franklin No. 07AP-917, 2008-Ohio-4258, ¶ 23, the Tenth District held that the stop sign in question was discretionary, and so did not fall under the public-roads exception to political subdivision immunity.

> [W]e note that the General Assembly explicitly excluded traffic control devices from the definition of a 'public road' unless the traffic control device was mandated by the OMUTCD. By its clear language, it is evident that the General Assembly did not intend all erected traffic control devices to be considered part of a public road.

*Id.* at ¶ 20.

6

{¶19} It is clear from *Walters,* the plain language of the statute, and the OMUTCD that the legislature did not intend for every traffic-control device to be considered mandatory and part of a public road. Likewise, the plain language of R.C. 4511.65(A) and *Bibler* and *Deitz* demonstrate that traffic-control devices at midblock crosswalks are not mandatory and are not part of a public road.

### *Crosswalk Lines*

{¶20} With regard to the crosswalk lines specifically, Buchenroth argues that the use of the word "shall" in section 3B.18 of the OMUTCD mandates crosswalk lines. Section 3B.18 ¶ 3-4 provides:

> [a]t non-intersection locations, crosswalk markings legally establish the crosswalk. When crosswalk lines are used, they shall consist of solid white lines that mark the crosswalk. They shall be not less than 6 inches or greater than 24 inches in width.

Section 3B.18 provides that crosswalk markings legally establish the crosswalk, and provides that certain requirements must be met when crosswalk lines are used, but it does not mandate usage of crosswalk lines at non-intersection locations.

{¶21} Furthermore, section 3B.18 ¶ 8 warns that "crosswalk lines should not be used indiscriminately. An engineering study should be performed before a marked crosswalk is installed at a location away from a traffic control signal." Section 3B.18 ¶ 11 says that warning signs "should" be installed at non-intersection crosswalks. There is nothing in the OMUTCD which indicates that crosswalk lines are to be treated as mandatory traffic-control devices. The public-roads exception to immunity does not apply, and therefore, whether the crosswalk in question complied with the exact requirements of section 3B.18 is irrelevant.

*Conclusion*

{¶22} Because the crosswalk signs and lines are not mandatory traffic-control devices, they do not fall within the public-roads exception to political subdivision immunity. There is no set of facts which Buchenroth could prove which would permit him to recover. Discovery will not change the location of the crosswalk, which is the defining issue in this case.

{¶23} The trial court erred in denying the city's motion for judgment on the pleadings. The sole assignment of error is sustained. The judgment is reversed and the cause is remanded to the trial court with instructions to enter an order granting the city's motion for judgment on the pleadings.

Judgment reversed and cause remanded.

**MYERS, P.J.,** and **WINKLER, J.,** concur.

Please note:

The court has recorded its own entry on the date of the release of this opinion.