[Cite as *Stykes v. Colerain Twp.*, 2019-Ohio-3937.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

DARYL STYKES,                           :          APPEAL NO.  C-180260
                                                  TRIAL NO. A-1705169
    Plaintiff-Appellant,           :

 vs.                                    :          *O P I N I O N.*

COLERAIN TOWNSHIP,                      :

    Defendant-Appellee.            :


Civil Appeal From:  Hamilton County Court of Common Pleas

Judgment Appealed From Is:  Affirmed

Date of Judgment Entry on Appeal:  September 27, 2019


*Becker & Cade, Dennis A. Becker* and *Justin S. Becker*, for Plaintiff-Appellant,

*Schroeder, Maundrell, Barbiere & Powers* and *John M. Milligan*, for Defendant-Appellee.

**ZAYAS, Presiding Judge**.

{¶1}   This is an appeal from the dismissal of a case involving a stop sign that was missing from an intersection in Colerain Township.  As a result of the missing sign, a motorcyclist collided with a vehicle and was seriously injured.  The motorcyclist, in an attempt to recover damages for his injuries, sued the township only to encounter another obstacle: sovereign immunity.  The Ohio General Assembly has granted political subdivisions immunity from liability for injuries and deaths on their roadways, subject to limited exceptions.  Unfortunately, none of the exceptions are applicable to this case.  Therefore, we must affirm the judgment of the trial court.

### Facts and Procedural History

{¶2}   In October 2014, plaintiff-appellant Daryl Stykes was driving his motorcycle along Bevis Lane in Colerain Township when he struck a vehicle that entered the roadway at the intersection of Hollis Drive.  The intersection is a three-way stop, but Stykes did not know to stop because the stop sign that was normally present was missing.  Stykes was ejected from his motorcycle and sustained serious injuries to his head, ribs, back, and extremities.

{¶3}   In October 2017, Stykes filed a lawsuit alleging that Colerain Township was negligent in failing to maintain the stop sign.  In November 2017, the township moved to dismiss the suit for failure to state a claim upon which relief could be granted, based upon statutorily granted immunity for political subdivisions.  In April 2018, the trial court granted the township's motion to dismiss Stykes's complaint.  Stykes now appeals asserting one assignment of error for review.

### Legal Analysis

{¶4}   Stykes argues that the trial court erred in dismissing his complaint because the stop sign in question was part of the public roadway that the township is

required to keep in repair under R.C. 2744.02(B)(3), an exception to statutory immunity.

{¶5}   Our standard of review of the trial court's judgment on the township's Civ.R. 12(B)(6) motion to dismiss is de novo.  *See Perrysburg Twp. v. Rossford*, 103 Ohio St.3d 79, 2004-Ohio-4362, 814 N.E.2d 44, ¶ 5.  A Civ.R. 12(B)(6) motion to dismiss for failure to state a claim is procedural and tests the sufficiency of the complaint. *State ex rel. Hanson v. Guernsey Cty. Bd. of Commrs.*, 65 Ohio St.3d 545, 548, 605 N.E.2d 378 (1992).

{¶6}   Deciding whether a political subdivision is entitled to immunity under R.C. Chapter 2744 involves a three-tiered analysis.  *Buchenroth v. City of Cincinnati*, 1st Dist. Hamilton No. C-180289, 2019-Ohio-2560, ¶ 3.  First, a political subdivision is generally immune from liability incurred in performing either a governmental or proprietary function.   R.C. 2744.02(A)(1); *Howard v. Miami Twp. Fire Div.*, 119 Ohio St.3d 1, 2008-Ohio-2792, 891 N.E.2d 311, ¶ 18.   Second, five exceptions to immunity listed in R.C. 2744.02(B) apply to expose a political subdivision to tort liability.  *Howard* at ¶ 18.  Third, if one of the exceptions does apply, the court must determine whether the political subdivision can reestablish immunity by demonstrating another statutory defense.  R.C. 2744.03; *Buchenroth* at ¶ 3.  The case before us turns on the second tier: whether an exception to immunity applies.

{¶7}   R.C. 2744.02(B)(3), as relevant to this case, states that "political subdivisions are liable for injury, death, or loss to person or property caused by their negligent failure to keep public roads in repair and other negligent failure to remove obstructions from public roads."   This is the only statutory exception under which Stykes asserts that Colerain Township is liable.

{¶8}   R.C. 2744.01(H) defines "public roads" as "public roads, highways, streets, avenues, alleys, and bridges within a political subdivision."  R.C. 2744.01(H) also states that "public roads" do not include "berms, shoulders, rights-of-way, or

traffic control devices unless the traffic control devices are mandated by the Ohio manual of uniform traffic control devices." Accordingly, a stop sign falls outside the definition of a public road unless it is "mandated by the Ohio manual of uniform traffic control devices" ("OMUTCD"). *Bibler v. Stevenson*, 150 Ohio St.3d 144, 2016-Ohio-8449, 80 N.E.3d 424, ¶ 8.

{¶9} Stykes contends that R.C. 2744.01(H) is not the only source of authority for determining whether a stop sign is mandatory. He argues that R.C. 4511.65(D) and a recent Ohio Supreme Court case interpreting R.C. 4511.65(A), *Bibler v. Stevenson*, control the issue of whether the stop sign was mandatory and thus whether the township was liable.

{¶10} In a plurality decision,[1] the *Bibler* court held that a public-road exception applied to a stop sign at an intersection of two streets, one of which was a state route. *Bibler* at ¶ 11. R.C. 4511.65(A) provides that "[a]ll state routes are hereby designated as through highways * * *." The court noted that, while the placement of the stop sign at a through highway was discretionary by the OMUTCD and therefore excluded from the definition of a public road under R.C. 2744.01(H), R.C. 4511.65(A) mandated that "stop signs, yield signs, or traffic control signals shall be erected at all intersections with *through highways* * * *." Ultimately, the court determined that the OMUTCD is subservient to the Revised Code and that when the OMUTCD and the Revised Code contradict each other the Revised Code controls. *Id.* at ¶ 16-18. Thus, where a stop sign was mandated at an intersection with a through highway, repair of the sign fell within the public-roads exception to immunity under R.C. 2744.02(B)(3). *Id.* at ¶ 17.

{¶11} Stykes argues that R.C. 4511.65(D) carves out a similar public-roads exception to immunity. R.C. 4511.65(D) states that

---

[1] A plurality opinion of the Ohio Supreme Court is not binding on this court, it is merely persuasive. *State v. Preztak*, 181 Ohio App.3d 106, 2009-Ohio-621, 907 N.E.2d 1254 (8th Dist.).

Local authorities with reference to highways under their jurisdiction may designate additional through highways and shall erect stop signs, yield signs, or traffic control signals at all streets and highways intersecting such through highways, or **may designate any intersection as a stop or yield intersection and shall erect like signs at one or more entrances to such intersection**.

(Emphasis added.)

{¶12} Stykes argues that the latter portion of this subsection means that once a political subdivision designates an intersection a "stop intersection," the placement and maintenance of a stop sign at the designated intersection is mandatory—at which point the failure to maintain the stop sign would open a political subdivision to tort liability like in *Bibler*. We disagree. A plain reading of this portion reveals that it is only applicable to "through highways," and it is undisputed that this case does not involve a through highway. Rather, the case involves two township streets that meet at a T-intersection. *Bibler* is distinguishable because it involved a stop sign at the intersection of a through highway that is explicitly mandated by the Revised Code. *See Deitz v. Harshbarger*, 2017-Ohio-2917, 89 N.E.3d 1271 (3d Dist.), *appeal not allowed*, 151 Ohio St.3d 1507, 2018-Ohio-365, 90 N.E.3d 948, ¶ 33 (also distinguishing *Bibler* because the roads at issue were not through highways).

{¶13} Our previous decision in *Darby v. Cincinnati*, 1st Dist. Hamilton No. C-130430, 2014-Ohio-2426, continues to control this issue. In *Darby*, a motorist sued the city of Cincinnati, alleging that the city failed to property maintain a marked stop sign, causing her to collide with another vehicle. *Id.* at ¶ 2. We held that because under the OMUTCD the placement of the stop sign was discretionary, the stop sign was not a traffic control device mandated by the OMUTCD and was therefore not included in the definition of a "public road" as that term is used in R.C.

2744.01(H). *Id.* at ¶ 22. Accordingly, the immunity exception contained in R.C. 2744.03(B)(3) did not apply. *Id.*

{**¶14**} While in *Darby* we looked to an earlier edition of the OMUTCD as relevant to that case, the discretionary provision on stop signs in the current edition remains virtually the same. Based on the date of the accident, the relevant edition of the OMUTCD is the 2012 edition. The 2012 edition, like the prior versions, defines four text headings: Standard, Guidance, Option, and Support. OMUTCD, Section 1A.13 (2012 Ed.). Guidance means "a statement of recommended, but not mandatory, practice in typical situations * * *." *Id.* The definition of Guidance notes that the verb "should" is typically used, while the verbs "shall" and "may" are not used in Guidance statements. *Id.* The provision on stop signs is preceded by this Guidance heading.

{**¶15**} Section 2B.06 of the 2012 edition of the OMUTCD, entitled "STOP Sign Application," is consistent with this discretionary heading. It provides:

\* \* \*

02 **The use of STOP signs on the minor-street approaches should be considered if engineering judgment indicates that a stop is always required** because of one or more of the following conditions:

A. The vehicular traffic volumes on the through street or highway exceed 6,000 vehicles per day;

B. A restricted view exists that requires road users to stop in order to adequately observe conflicting traffic on the through street or highway; and/or

C. Crash records indicate that three or more crashes that are susceptible to correction by the installation of a STOP sign have been reported within a 12-month period, or that five or more such crashes

6

have been reported within a 2-year period. Such crashes include right-angle collisions involving road users on the minor-street approach failing to yield the right-of-way to traffic on the through street or highway.

(Emphasis added.)

{¶16} As in *Darby*, the OMUTCD states that stop signs "should" be used if engineering judgment indicates that one or more of the listed conditions exists. The manual "is devoid of any language indicating that stop sign placement at an intersection is ever mandated." *Darby*, 1st Dist. Hamilton No. C-130430, 2014-Ohio-2426, at ¶ 12.

{¶17} Therefore, because the placement of the stop sign at the intersection of Bevis Lane and Hollis Drive was not mandatory under the OMUTCD, the stop sign was not a traffic-control device mandated by the OMUTCD and was therefore not included in the statutory definition of a "public road." Consequently, the immunity exception contained in R.C. 2744.03(B)(3) does not apply. Because there is no exception to the general rule of immunity, we need not address the third tier of the immunity analysis. *See Darby* at ¶ 20.

### Conclusion

{¶18} Taking all of the allegations of Stykes's complaint as true, we find that he can prove no set of facts that would entitle him to relief. Therefore, the trial court did not err in granting the township's Civ.R. 12(B)(6) motion to dismiss. Accordingly, Stykes's sole assignment of error is overruled and the trial court's judgment is affirmed.

Judgment affirmed.

**MYERS** and **BERGERON, JJ.,** concur.

Please note:

The court has recorded its own entry on the date of the release of this opinion.